2009 Ark. 88

**L.D. SHIELDS, Appellant,**

**v.**

**QHG OF SPRINGDALE, INC., North-
west Health System, Center of Wash-
ington County, and John H. Kendrick,
M.D., Appellees.**

No. 08–744.

Supreme Court of Arkansas.

Feb. 26, 2009.

Leah B. Lanford, Little Rock, AR, for appellant.

Kutak Rock LLP, by: J. Phillip Malcom and Allison Langston, Little Rock, AR, for appellant John H. Kendrick, M.D.

Bassett Law Firm LLP, by: Dale Garrett, Shannon L. Fant, and Robert L. Depper III, Fayetteville, AR, for appellee QHG of Springdale, Inc.

JIM HANNAH, Chief Justice.

This appeal arises from the filing of a medical malpractice action. Appellant L.D. Shields appeals an order of the Washington County Circuit Court granting summary judgment in favor of appellees Northwest Medical Center of Washington County and John H. Kendrick, M.D. Shields's points on appeal are directed not at the granting of the summary judgment, but at his attorney's representation of him in this matter. During the litigation, Shields's attorney, Jeffrey G. Malm, filed a motion to withdraw as counsel. Prior to ruling on that motion, the circuit court granted summary judgment in appellees' favor and ruled that Malm's motion to withdraw as counsel was moot. On appeal, Shields asserts that the circuit court erred in permitting Malm to continue to serve as his attorney where the circuit court was aware that Malm had been discharged by Shields and where a conflict of interest was apparent. He also asserts that the circuit court erred in failing either to strike pro se pleadings or otherwise make an appropriate ruling on the pleadings. Shields claims that, due to his attorney's conduct and errors of the circuit court, his rights were prejudiced, and he urges this court to reverse the circuit court's findings and allow him additional time to pursue his cause of action. We affirm the circuit court.

On January 12, 2004, Kendrick performed surgery on Shields's wife, Harriet. In a subsequent surgical procedure performed on May 4, 2004, Kendrick removed what he referred to as "a large piece of old mesh and Prolene suture" from Ms. Shields's abdomen. On March 1, 2007, Shields, through his attorney, Malm, filed a medical malpractice action against Northwest and Kendrick, alleging that when Kendrick performed surgery on Ms. Shields on January 12, 2004, he left material inside her abdomen that became infected and kept her wound from healing.[1] Shields attached to his complaint the affidavit of Stevan Van Ore, M.D., who treated Ms. Shields for a number of years as her primary care physician. In reference to the surgery, Van Ore stated that it was

1. This was the second complaint Malm filed on behalf of Shields. The case was originally filed by Malm on January 6, 2005, on behalf of Shields and his wife; the case was nonsuited in March 2006. Subsequently, Ms. Shields died, and the case was refiled by Malm on March 1, 2007, on behalf of Shields in his individual capacity and as a personal representative of the Estate of Harriet Shields.

"clearly negligence and a breach of the standard of care for the hospital employees to fail to remove the gauze or foreign objects from the wound."

On or around January 18, 2008, counsel for Northwest notified Malm of his intent to call as an expert witness, Bruce Hansel, Ph.D., Executive Director for Forensic Services at the Accident and Forensic Investigation Group in Plymouth Meeting, Pennsylvania. Northwest provided Malm a copy of the report prepared by Hansel following his examination and analysis of the foreign material removed from Ms. Shields. In Hansel's opinion, the material was prosthetic mesh from a prior surgery that had been intended to remain in Ms. Shields's body permanently. Hansel stated in the report that resorbable sutures may have been used, and that once the sutures dissolved, the material could have then migrated.

On January 23, 2008, Malm filed a motion to withdraw as counsel for plaintiff, on the grounds that he had received discovery from Northwest, indicating that the infected material over which the case arose had been tested and was not believed to be wound packing material negligently left by Kendrick, although he did remove the material in May 2004. Malm stated in his motion that he had thirty years of extensive litigation experience, including medical negligence cases, and that his evaluation of the case led him to the conclusion that the case was not economically viable due to the fact that the material found was in all reasonable probability from one of Ms. Shields's prior surgeries. Malm stated that, after consulting with medical experts and other attorneys, he believed that pursuing the case was "very unwise" and "potentially in bad faith." Malm further stated that his opinion of the case was "diametrically opposed" to the opinion of Shields, and that this difference of opinion created a "fatal conflict." Finally, Malm requested that the litigation be stayed for sixty days to give Shields time to employ other counsel.

On January 29, 2008, Kendrick filed a motion for summary judgment based on Shields's failure to file an affidavit of a general surgeon, as required by Arkansas Code Annotated section 16–114–209; the findings in Hansel's report; and Malm's admission that he could find no expert to support Shields's claims. Kendrick attached to his brief in support of the motion the affidavit of general surgeon Charles Mabry, M.D., who reviewed the medical records and other facts and evidence in the case and concluded that the material removed from Ms. Shields's abdomen on May 4, 2004, was the prosthetic mesh originally placed in the hernia repair surgery performed by Marc Wittmer, M.D., in 1997. Northwest filed its own motion for summary judgment on February 4, 2008, attaching the affidavit of Mabry and the report of Hansel.

On February 7, 2008, Malm filed a response to the motions for summary judgment, on behalf of Shields, stating that there was no evidence to create a genuine issue of material fact. Malm did, however, advise the court on behalf of Shields, that Shields believed the material tested was not the material removed in May 2004, that there was some "malice" involved, and that the material had been "switched." Malm stated that he had complied with his legal and ethical duties and obligations in his representation of Shields, and he averred that he would not advance a groundless claim.

On February 12, 2008, Malm forwarded to counsel for Kendrick an order granting summary judgment that was already signed by Malm and counsel for Northwest. Malm asked counsel for Kendrick to

sign the order and forward it to the circuit court.

On February 13, 2008, Shields filed a pro se motion to enlarge time for response to motion for summary judgment, requesting a continuance, pursuant to Arkansas Rule of Civil Procedure 56(f), to conduct additional discovery, and requesting that he be given time to hire new counsel. Shields attached to his motion a letter from Wittmer, who stated that the material removed from Ms. Shields in 2004 was shaped differently from the patch he used in the 1997 hernia repair surgery and appeared to be in a different location than where he had originally placed it. Kendrick responded to Shields's motion to enlarge time, stating that Malm was still the attorney of record for Shields and that Malm had continuously and affirmatively acted as Shields's attorney by filing pleadings on his behalf. Subsequently, the circuit court entered an order setting a hearing for March 27, 2008, to consider Malm's motion to withdraw and the appellees' motions for summary judgment.

On February 14, 2008, Kendrick filed a response to Malm's motion to withdraw, arguing that summary judgment was warranted and that granting the motion to withdraw would unfairly delay proceedings and would cause unnecessary expense and stress for all parties. Kendrick requested that the circuit court require Malm to continue as Shields's attorney until the pending motions for summary judgment could be adjudicated or, alternatively, until substitute counsel appeared for Shields and agreed to proceed with trial, which was scheduled for May 12–16, 2008.

On March 5, 2008, the circuit court held a telephone conference with Malm and counsel for both appellees. In response to the circuit court's inquiry, Malm stated that he was still Shields's attorney. Moreover, Malm agreed that summary judg-

ment was appropriate and that his motion to withdraw as counsel was moot. Following the telephone conference, the circuit court entered an order granting appellees' motions for summary judgment, dismissing Shields's complaint with prejudice, and denying Malm's motion to withdraw as being moot.

On the same afternoon as the hearing, Shields submitted a letter to the circuit court, stating that he had received Kendrick's response to his motion to enlarge time and was unaware that Malm had signed "a motion to dismiss with prejudice" or that Malm had responded to the motions for summary judgment on his behalf. Shields stated in the letter that Malm had informed him he was no longer his attorney. In addition, Shields stated that he did not authorize Malm to act on his behalf. The circuit court issued a letter the next day, serving Malm, as well as counsel for appellees, explaining that the Arkansas Code of Judicial Conduct prohibited him from discussing the case. The circuit court stated that it had not read the letter after discovering that it was an ex parte communication and noted that the letter would be placed in the case file. This appeal followed.

*Attorney Malm's Continued Representation of Shields*

■ Shields first asserts that the circuit court erred in permitting Malm to continue to serve as his attorney where it was aware that Malm had been discharged by Shields and where a conflict of interest was apparent. In support of this argument, Shields cites Arkansas Rule of Civil Procedure 64(b) and cases interpreting the application of that rule. Rule 64(b) concerns the withdrawal of counsel and the factors the circuit court must consider in determining whether an attorney should

be permitted to withdraw from a proceeding or from representation of a party. In this case, the circuit court did not grant Malm's motion to withdraw; rather, the circuit court denied the motion as being moot. Thus, the circuit court did not consider the merits of Malm's motion pursuant to Rule 64(b). Accordingly, Rule 64(b) and the cases interpreting that rule are inapplicable to the instant case.

An attorney who appears in court is presumed to be authorized to represent the client. *Mobley v. Harmon*, 313 Ark. 361, 854 S.W.2d 348 (1993); *Pender v. McKee*, 266 Ark. 18, 582 S.W.2d 929 (1979). The burden is on the client to show that the attorney had no authority to appear on his or her behalf. *See Pender, supra.* This authority can be put in issue only upon a showing of facts tending to indicate a want of authority. See *Nunez v. O.K. Processors, Inc.*, 238 Ark. 429, 382 S.W.2d 384 (1964). Where court records show an entry of a party's appearance by a regular practicing attorney, evidence of his or her lack of authority must be clear and satisfactory to warrant relief from judgment against the party. *See Pender, supra.*

Based upon this standard, we must consider whether Shields made a showing of facts tending to indicate that Malm lacked the authority to represent him. Shields asserts that at the point Malm notified the circuit court through his motion to withdraw that his interests had diverged from Shields's interests, and especially in light of the tone of Malm's supporting brief, the circuit court should have recognized that Malm was no longer acting in Shields's best interest, but that he essentially had become his own client, advocating his own position.

Appellees contend that the circuit court did not err in permitting Malm to continue to serve as Shields's attorney. They assert that, because Malm continuously represented to the circuit court that he was Shields's attorney and affirmatively acted as Shields's attorney, he had apparent authority to represent Shields. Appellees also assert that there was no legally cognizable conflict of interest between Shields and Malm. In addition, appellees contend that Malm had an affirmative duty to disclose to the circuit court that Shields's claims were groundless and could not be pursued in good faith. Finally, appellees state that the circuit court had an affirmative duty to prevent the litigation of a meritless claim.

Upon review of Malm's motion to withdraw and brief in support, it does not appear that Malm was advocating his own position, but rather explaining to the circuit court how the attorney-client relationship had deteriorated due to disagreement about whether or not to proceed with the case. Malm explained in his motion that Shields had "opinions regarding the facts which conflict with counsel's professional opinions, and cannot be proved by any experts available to counsel at this time." Further, Malm averred that he could not state after reasonable inquiry that the case was well grounded in fact, such that he would be in compliance with Arkansas Rule of Civil Procedure 11. Malm, in his professional judgment, disagreed with Shields about the merits of the case and essentially informed the court that pursuing the case would be frivolous. Thus, Malm used candor toward the tribunal, which as an officer of the court, he is required to do. *See* Ark. Sup. Ct. R. Prof'l Conduct 3.3.

Shields also asserts that it was clear from the escalating tone of the multiple motions filed by Malm and defense counsel that Malm was no longer representing Shields, but was enthralled in a personal battle with opposing counsel and looking to drop the case as soon as possible without

ruining his reputation, "even if it meant hanging his client out to dry." While Shields cites to pleadings contained in the addendum of his brief, he does not provide examples of what language he alleges is indicative of the contention between Malm and defense counsel. After reviewing the pleadings, it is clear that Malm was explaining to the circuit court that he believed Shields's case was without merit and that he could not pursue it in good faith. For example, in plaintiff's response to defendants' motions for summary judgment, Malm wrote:

> Counsel will not pursue the issue that the tested material has been "switched" which is the Plaintiff's theory now. Counsel's position is that based on the available evidence, the Plaintiff cannot meet his burden of proof on the liability facts regarding the necessary proof to establish, to a reasonable degree of medical certainty, that the material was left inside Ms. Shields by the Defendants, notwithstanding when it may have actually been placed in her. That is irrelevant to the Plaintiff's burden of proof. It is material designed, according to the report, to be left in the body, and there is no medical evidence available to the contrary.

The record reflects that Kendrick opposed Malm's motion to withdraw as counsel. Kendrick stated that he had already been forced to defend the lawsuit for two years, and if Malm were allowed to withdraw and litigation were stayed, then the case would be delayed for many months. Even so, this has no bearing on what Malm reported to the circuit court—that Shields could not meet his burden of proof. It appears that Malm's assessment of the case, based upon his professional judgment, was an evaluation of the merits of the case and was not, as Shields suggests, intended to preserve Malm's reputation.

Shields further asserts that the circuit court erred in allowing Malm to continue to represent him because Shields had fired Malm. Shields contends that the circuit court should have known that he had discharged Malm when Malm noted in a supplemental brief to his motion to withdraw that Shields had picked up his file and when Shields began filing his own pleadings. Shields also asserts that his attachment of Wittmer's letter to his motion to enlarge time is direct evidence of discharge because it shows that Shields was producing his own evidence.

Kendrick points out that the motion to withdraw, response to appellees' motions for summary judgment, and the reply to appellees' response to motion to withdraw filed by Malm on behalf of Shields contain no statements that Shields had fired Malm. Kendrick adds that Shields himself never informed the circuit court that he had fired Malm. While there is nothing in the record to suggest that Shields fired Malm, there is a suggestion, advanced by Shields, that Malm had discharged Shields as a client. As previously noted, the record reveals that in his letter to the circuit court, Shields claimed that Malm informed him that he no longer represented him. However, the circuit court never read Shields's letter because it was an ex parte communication.

Here, we cannot say that the circuit court had reason to believe that Shields had fired Malm. Malm continued to represent Shields in court, and there was no reason for the circuit court to believe that Malm did not have the authority to do so. The fact that Shields picked up his case file did not necessarily mean that Shields was no longer employing Malm, as clients may request files from their attorneys. In addition, Shields cites no authority for the proposition that simply filing pro se motions constitutes an act or desire

to discharge counsel. Indeed, this court has recognized that circuit courts may choose to hear motions submitted pro se by a client who is represented by counsel. *See Monts v. Lessenberry*, 305 Ark. 202, 806 S.W.2d 379 (1991). In sum, Shields failed to make a showing of facts tending to indicate that Malm lacked the authority to represent him. Accordingly, we hold that the circuit court did not err in permitting Malm to continue to serve as Shields's attorney.

### Ruling on the Pro Se Motion

Shields next asserts that the circuit court erred in failing either to strike pro se pleadings or otherwise make an appropriate ruling on the pleadings. When a represented party files a pro se motion, the circuit court should exercise its discretion and dispose of the motion by either striking it on the ground that the party is represented by counsel and was thus not entitled to proceed pro se or by otherwise making an appropriate ruling. *See, e.g., Monts, supra.* Moreover, such motions should be disposed of promptly and made a matter of record. *Urquhart v. Davis*, 342 Ark. 9, 25 S.W.3d 411 (2000).

In the instant case, Shields's motion to enlarge time requested time to hire new counsel and a continuance pursuant to Arkansas Rule of Civil Procedure 56(f), which provides:

> *When Affidavits are Unavailable.* Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Here, the record shows that the circuit court was aware of Shields's pro se motion to enlarge time when it granted the motion for summary judgment in favor of appellees. Thus, it is clear that the circuit court determined that there was no genuine issue of material fact concerning whether appellees were liable for Ms. Shields's injuries and, therefore, concluded that appellees were entitled to summary judgment as a matter of law. By granting summary judgment against Shields, the circuit court effectively denied Shields's motion to enlarge time, thereby discharging its duty to strike or "otherwise make an appropriate ruling" disposing of Shields's pro se motion. Finally, we note that Shields does not challenge the circuit court's granting summary judgment. Therefore, it is unnecessary for this court to address appellees' arguments regarding summary judgment.

Affirmed.

BROWN, IMBER and DANIELSON, JJ., dissent.

PAUL E. DANIELSON, Justice.

Respectfully, I dissent. Our case law makes clear, and the majority acknowledges, that once a pro se motion is filed by a represented party, a circuit court should exercise its discretion to either (1) strike the pro se motion on the ground that the defendant is represented by counsel and thus was not entitled to proceed pro se, or (2) otherwise make an appropriate ruling on the motion. *See Urquhart v. Davis*, 342 Ark. 9, 25 S.W.3d 411 (2000); *Monts v. Lessenberry*, 305 Ark. 202, 806 S.W.2d 379 (1991). In either event, "disposition should be prompt *and* made a matter of record." *Urquhart*, 342 Ark. at 9, 25 S.W.3d at 411 (emphasis added); *Monts*, 305 Ark. at 206, 806 S.W.2d at 382 (emphasis added).

Here, the majority affirms the circuit court's action on the basis that the circuit court's grant of summary judgment "effectively" denied Shields's motion to enlarge time, thus disposing of Shields's pro se motion. Such a holding is in clear conflict with our case law. The circuit court was required to dispose of Shields's motion promptly *and as a matter of record.* Thus, the circuit court was required to act affirmatively, not "effectively." Because the circuit court neither struck Shields's motion, nor acted on the motion, I would reverse and remand. *See, e.g., Urquhart v. Davis,* 341 Ark. 653, 19 S.W.3d 21 (2000); *Monts v. Lessenberry, supra.*

BROWN and IMBER, JJ., join.