2010 Ark. 467

**Jimmy Don WOOTEN, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 95–975.**

Supreme Court of Arkansas.

Dec. 2, 2010.

Billy H. Nolas, Michael Wiseman, and Rebecca Blaskey, Federal Community Defender Office Eastern District of Pennsylvania, and J. Blake Hendrix, Little Rock, for movant.

Dustin McDaniel, Att'y Gen., by: Pamela A. Rumpz, Ass't Att'y Gen., for appellee.

JIM GUNTER, Justice.

Wooten asks this court to recall our mandate and allow him to pursue a second Rule 37 proceeding. He asserts that he meets this court's stringent criteria for providing this extraordinary relief. Because this is a criminal appeal in which the death penalty has been imposed, and the petitioner is asking this court to recall our mandate, we have jurisdiction pursuant to Ark. Sup.Ct. R. 1–2(a)(2) & 5–3(d). We grant the motion to recall the mandate.

Wooten was convicted of capital murder, criminal attempt to commit capital murder, and aggravated assault, and was sentenced to death, thirty years, and six years, respectively. This court affirmed those convictions in *Wooten v. State,* 325 Ark. 510, 931 S.W.2d 408 (1996) (*Wooten I* ). Wooten then hired James Clawson to represent him in postconviction proceedings. On April 21, 1997, Clawson filed on Wooten's behalf a petition for postconviction relief that was not verified by Wooten. This petition was denied by the circuit court, but this court reversed and remanded for appropriate written findings and an evidentiary hearing if necessary pursuant to Rule 37.3. *Wooten v. State,* 338 Ark. 691, 1 S.W.3d 8 (1999) (*Wooten II* ). In June 2000, the circuit court again denied postconviction relief, and no appeal from that order was filed by Clawson. James Clawson surrendered his law license on June 7, 2001. *In re Clawson,* 49 S.W.3d 99 (Ark.2001) (per curiam). Alvin Schay was then appointed to represent Wooten, and we granted Wooten's motion for rule on clerk in his appeal of his denial of postconviction relief. *See Wooten v. State,* 347 Ark. 370, 64 S.W.3d 708 (2002) (*Wooten III* ). This court subsequently affirmed the denial of postconviction relief in *Wooten v. State,* 351 Ark. 241, 91 S.W.3d 63 (2002) (*Wooten IV* ).

On October 2, 2003, Wooten filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of Arkansas, alleging that both his convictions and sentence were in violation of various provisions of the United States Constitution. Specifically, Wooten asserted that his trial counsel had been constitutionally ineffective for (1) failing to argue, during the guilt phase of his trial, that mental health issues prevented him from formulating the necessary mens rea for capital murder, and (2) failing to present certain mitigating evidence during the sentencing phase of his trial. In an opinion issued September 19, 2006, the district court found Wooten's arguments without merit and denied the petition for writ of

habeas corpus. *Wooten v. Norris,* No. 5:03cv00370, 2006 WL 2686925 (E.D.Ark. Sept. 19, 2006).

In March 2007, attorney J. Blake Hendrix filed a motion with this court to appear as counsel and also tendered a motion to recall the mandate in Wooten's case. We denied the ⌊₃motion to appear as counsel on April 26, 2007, and made no mention of the tendered motion to recall the mandate. No further action was taken on the case in this court until October 2009; meanwhile, the judgment of the federal district court was affirmed by the Eighth Circuit Court of Appeals on August 26, 2009. *Wooten v. Norris,* 578 F.3d 767 (8th Cir.2009). In its opinion, the Eighth Circuit noted that the district court had declined to stay the federal case and hold federal proceedings in abeyance pending further exhaustion of state remedies. The court also found that Wooten's claims in his federal appeal were procedurally defaulted because they had not been presented to the state courts. In sum, the Eighth Circuit found that, while Wooten may be entitled to relief in the form of a recall of the mandate from this court, "this is a case for which the federal courts can provide no relief because of post-conviction counsel's failure to exhaust the allegedly meritorious claims." *Id.* at 785. The court concluded: "Because Wooten's Motion to Recall and Reopen is not a proper vehicle for exhausting state remedies in Arkansas or creating a state record that might support federal habeas claims, it was proper for the district court to reject his Rule 59(e) motion and his motion to stay federal proceedings." *Id.* at 786.

On October 1, 2009, Wooten's current counsel, which includes three out-of-state attorneys from the Federal Community Defender Office of the Eastern District of Pennsylvania, and local attorney J. Blake Hendrix, filed an application for permission to be appointed as counsel in Wooten's case. Counsel also tendered a "Motion to Clarify Status of Motion to Recall the Mandate." We granted counsels' application for permission to be ⌊₄appointed as counsel on Wooten's behalf on November 5, 2009, and on December 10, 2009, we denied the motion to recall the mandate without prejudice and with the right to refile a motion to recall the mandate. On December 28, 2009, another motion to recall the mandate was filed on Wooten's behalf, and this court decided to submit the motion as a case, which is now presently before the court.

Wooten asserts that this court should recall the mandate in his case and allow him to pursue a second Rule 37 proceeding. He claims that his case satisfies the criteria for recalling the mandate under this court's precedents in *Robbins v. State,* 353 Ark. 556, 114 S.W.3d 217 (2003), *Lee v. State,* 367 Ark. 84, 238 S.W.3d 52 (2006), and *Collins v. State,* 365 Ark. 411, 231 S.W.3d 717 (2006). In *Robbins,* the defendant was convicted of capital murder and given the death sentence. Nearly two years after this court affirmed his conviction and sentence, Robbins petitioned this court to reopen his case and alleged that a mistake was made by this court in failing to recognize that the jury was inconsistent in its completion of Verdict Form 2, which deals with mitigating circumstances. According to Robbins, this court reversed a death sentence and remanded for resentencing for precisely the same inconsistency in Verdict Form 2 in *Willett v. State,* 322 Ark. 613, 911 S.W.2d 937 (1995). This court explained that we will recall a mandate and reopen a case only in extraordinary circumstances, and in Robbins's case, there were three specific factors that prompted the decision to recall the mandate: (1) a decision had been cited to the court which was on all fours legally with the issue presented; (2) the dismissal of

proceedings in federal court because of unexhausted state-court claims; (3) the appeal was a death case that required heightened scrutiny. The *Robbins* opinion stressed that the situation was "one of a kind, not to be repeated." 353 Ark. at 564, 114 S.W.3d at 223.

Wooten argues that the same three considerations enumerated in *Robbins* require a finding of "extraordinary circumstances" and a recall of the mandate in his case. First, he argues that, like Robbins, he has "arguably meritorious" claims that have not been reviewed by this court, and he has cited this court to a decision, namely the Eighth Circuit opinion discussed above, that shows he has compelling claims for relief. Second, he, like Robbins, was unable to obtain a review of his claims in federal court because his claims had not been addressed in state court. And third, his case, like *Robbins*, is a death-penalty case where heightened scrutiny is required.

We find that Wooten has misconstrued the meaning of the *Robbins* criteria for recalling the mandate. First, Wooten misunderstands the first factor, which is a case cited to this court that is "on all fours legally with the issue presented." Wooten cites the Eighth Circuit opinion as fulfilling this requirement, but *Robbins* was referring to a recent case handed down by this court, prior to the affirmance of Robbins's case, that is directly contrary to Robbins's death sentence. *See Robbins*, 353 Ark. at 565, 114 S.W.3d at 223. Even the Eighth Circuit opinion explained that, in *Robbins*, this court "determined that it had the inherent authority and jurisdiction to recall its own mandate in a death-penalty case where a defendant alleged an error *that was identical to an error in another*

*capital case for which the same court had recently granted [6] relief." Wooten v. Norris,* 578 F.3d at 783 (emphasis added).

Wooten has also misconstrued the second criteria in *Robbins,* which is that federal proceedings have been dismissed because of unexhausted state claims. Robbins's habeas corpus petition was dismissed by the federal district court without prejudice on the basis that Robbins had not exhausted his state remedies, specifically noting that state courts had not examined his inconsistency-in-the-verdicts argument under *Willett.*[1] In the present case, however, the federal district court denied Wooten's request to hold federal proceedings in abeyance, and the Eighth Circuit affirmed both that decision and the denial of Wooten's petition for writ of habeas corpus. So Wooten has clearly failed to meet the second criteria in *Robbins.* Indeed, the only criteria that Wooten has successfully met under *Robbins* is that his case is a death-penalty case that requires heightened scrutiny.

In *Lee,* the defendant was convicted of capital murder and sentenced to death. His conviction and sentence were affirmed by this court, and we also affirmed the circuit court's later denial of Lee's petition for postconviction relief under Rule 37. Lee then filed for habeas corpus relief in federal court, and the federal district court determined that it was necessary to hold the petition in abeyance to allow Lee to seek additional recourse in state court. This decision was based on the district court's concern over possible impairment of Lee's counsel during the Rule 37 proceedings. Lee then petitioned this court to recall the mandate and [7] reopen postconviction proceedings, arguing that his

---

1. As explained in the discussion of *Lee v. State, infra,* this requirement from *Robbins* was later expanded to include situations where federal proceedings are held in abeyance so a petitioner may pursue any unexhausted state claims.

Rule 37 counsel was impaired by alcohol use during the time he represented Lee in postconviction proceedings, a fact admitted to by counsel.

In discussing the criteria necessary to establish the extraordinary circumstances that would warrant a recall of the mandate, the *Lee* opinion enumerated the *Robbins* factors as follows: (1) the presence of a defect in the appellate process; (2) a dismissal of proceedings in federal court because of unexhausted state court claims; (3) the appeal was a death case that required heightened scrutiny. *See Lee,* 367 Ark. at 88, 238 S.W.3d at 55.[2] This court held that in Lee's case, there was a defect in the appellate process: "Certainly, the intoxication and subsequent impairment of Lee's appointed counsel during the Rule 37 proceedings constitute a defect because of the exacting requirements of Rule 37.5 regarding the appointment of qualified counsel in postconviction proceedings for a person under a sentence of death." *Id.,* 238 S.W.3d at 55. This court determined that the second factor was also met, as the decision to hold Lee's federal petition in abeyance, instead of dismissing the petition, was based on a procedural issue that would have resulted in Lee being barred from returning to federal court to refile his petition because of the one-year statute of limitations imposed on habeas petitioners. Thus, we granted Lee's motion to recall the mandate and remanded the case to the circuit court.

In the present case, Wooten asserts that he suffered the same type of "counsel-related 'defect'" in his Rule 37 proceedings. He argues that he was denied the assistance of qualified counsel because his attorney, James Clawson, was, inter alia, ineligible to practice law, had perpetrated fraud upon both Wooten and the courts, and was "embroiled in his own legal troubles." He also argues that he meets the second and third criteria as explained in his discussion of *Robbins, supra.*

Wooten claims that his Rule 37 counsel was, at the time of his representation of Wooten in this case, ineligible to practice law. This is apparently because Clawson was disbarred in Oklahoma in 1993, and Wooten believes that disbarment resulted in an automatic disbarment in Arkansas, too. However, under the rules of professional conduct in effect at the time, that disbarment would be reciprocal and result in his disbarment in Arkansas only upon the filing of the disbarment order with the Committee on Professional Conduct. Section 7(F) of the Procedures Regulating Professional Conduct of Attorneys at Law (1993) provides:

(1) The disbarment or suspension of any person from the practice of law in any other state shall operate as a disbarment or suspension of such person from the practice of law in this State under any license issued to such person by the Arkansas Supreme Court prior to his disbarment in such other state.

(2) Upon presentation of a certified order or other proper document of a tribunal or a corresponding disciplinary authority of another jurisdiction evidencing disbarment or suspension, the Committee shall cause a like sanction to be imposed and shall notify the Clerk of such action. Notice of the Committee's action shall be sent to the attorney's

---

2. The changed wording in the first requirement appears to come from this court's decision in *Engram v. State,* 360 Ark. 140, 200 S.W.3d 367 (2004), in which this court clarified that the purpose of recalling the mandate and reopening the case in *Robbins* was to correct an error in the appellate process, specifically an error that was made during this court's review, and the recall of the mandate was intended to give this court an opportunity to address an issue that it should have addressed before.

mailing address on record with the Clerk.

*See also* Rules of Professional Conduct, Rule 16 (1993). However, until the time that documentation was filed with the Committee and an order was entered, Clawson was still eligible to practice law in Arkansas. This court was not notified of Clawson's Oklahoma disbarment until 2001, at which time he surrendered his Arkansas license in lieu of being disbarred. So Wooten is mistaken that Clawson was ineligible to practice law at the time of his representation. Additionally, it appears that there was no requirement to report disbarment in another jurisdiction until the most recent amendment to our rules on January 14, 2010. *See* Procedures Regulating Professional Conduct, Section 14(a) (2010). And finally, as to the second and third criteria under *Robbins* and repeated in *Lee*, Wooten has again failed to meet the second criteria.

Finally, in *Collins*, the defendant was convicted of capital murder and sentenced to death on October 21, 1997. His conviction and sentence were then affirmed by this court on June 3, 1999. Pursuant to Rule 37.5(b)(1), counsel was then appointed to pursue Rule 37 relief, but there was nothing in the record to show that the appointed attorneys were qualified under Rule 37.5. Furthermore, the Rule 37 petition filed with the circuit court on October 12, 1999, was not verified by Collins. Two additional Rule 37 petitions were filed on October 13, 1999, and October 14, 1999, again without verification from Collins. The State filed a response, but no action was ever taken on the petitions. In fact, no action was taken in the case until January 31, 2003, when a new attorney was appointed to represent Collins. Collins also filed several pro se petitions in 2003. A hearing was eventually held on May 20, 2004, at which the parties referred to a petition under Rule 37.5, but no corresponding petition was in the record. The order ultimately denying the Rule 37 petition was presumably based on the hearing, the judge's notes, and a memorandum prepared by Collins's counsel summarizing the May 20, 2004 hearing. This court specifically noted that none of the petitions filed since 1999 had complied with Rule 37.5.

In this court's analysis, we explained that Rule 37.5 provides specific procedures setting out how postconviction relief is to be pursued, including deadlines that must be met, and in this case, there was clearly "a breakdown in the postconviction relief proceedings." 365 Ark. at 415, 231 S.W.3d at 720. We also noted that, while we have affirmed denial of postconviction relief even if the petition was not verified in cases where the defendant did not receive a sentence of death, a death-penalty case was one which demanded unique attention to procedural safeguards. We therefore remanded the case to circuit court for the appointment of Rule 37.5 qualified counsel and to allow Collins to file a verified petition for postconviction relief that complied with Rule 37.5.

Wooten asserts that there was a similar "breakdown" in his postconviction proceedings because the Rule 37 petition filed by Clawson was never verified or otherwise authorized by Wooten. Therefore, Wooten argues, he should be allowed to proceed with renewed postconviction proceedings that will allow his "compelling claims of constitutional error" to be addressed by the Arkansas courts.

Arkansas Rule of Criminal Procedure 37.1(c) requires that a petition seeking relief pursuant to the rule be

verified.[3] The verification requirement for a postconviction-relief petition is of substantive importance to prevent perjury. *Carey v. State*, 268 Ark. 332, 596 S.W.2d 688 (1980). To serve this purpose, a petitioner must execute the verification, and if the petitioner is represented by counsel, counsel may not sign and verify the petition for him. *Boyle v. State*, 362 Ark. 248, 208 S.W.3d 134 (2005) (per curiam). A trial court cannot consider the issues in a petition which does not comply with the verification requirement of the rule. *See Shaw v. State*, 363 Ark. 156, 211 S.W.3d 506 (2005) (per curiam).

■ As noted above, this court will routinely affirm the denial of postconviction relief if the petition is not verified; however, death-penalty cases are afforded unique procedural safeguards. In addition to this court's ruling in *Collins*, we have also remanded a Rule 37 appeal for verification when a petition for postconviction relief in a death-penalty case was not properly verified, rather than dismissing the petition. *Howard v. State*, 366 Ark. 453, 236 S.W.3d 508 (2006).[4]

■ We find that, in the present case, the lack of verification constitutes a defect or breakdown in the appellate process that requires a recall of the mandate. While there is no constitutional right to a postconviction proceeding, when a state undertakes to provide collateral relief, due process requires that the proceeding be fundamentally fair. *Porter v. State,* 339 Ark. 15, 2 S.W.3d 73 (1999). And while this court has held Rule 37.5 does not govern Wooten's postconviction review, we have also held that the "intent and purpose" behind the rule should apply. *Wooten II,* 338 Ark. at 696, 1 S.W.3d at 11. *Porter, supra,* is instructive in this regard:

> In light of the fact that this is a case involving the death penalty and the fact that Rule 37.5 has in effect cured the instant situation from recurring, coupled with the ambiguous circumstances surrounding appellant's legal representation, and the requirements of due process, we hereby hold that fundamental fairness, *in this narrowest of instances where the death penalty is involved,* dictates an exception in the present matter to allow appellant to proceed with his Rule 37 petition.

339 Ark. at 19, 2 S.W.3d at 76. While *Porter* involved an appeal from the denial of postconviction relief on procedural grounds, and not a recall of the mandate, the same reasoning applies to the present case. The fact remains that there has yet to be filed a Rule 37 petition for postconviction relief in the circuit court that has been verified by Wooten, which is in direct contravention to the dictates of Rule 37. Therefore, we grant the motion to recall the mandate.

Motion granted.

BROWN, J., concurs.

HANNAH, C.J., and WILLS, J., dissent.

ROBERT L. BROWN, Justice, concurring.

The majority opinion concludes that the mandate should be recalled based on Wooten's lack of verification of his Rule 37 petition. But there is an equally important reason to recall the mandate, which is the woefully deficient presentation of

---

3. This verification requirement was a part of the rule at the time Wooten's Rule 37 proceedings took place. *See* Ark. R.Crim. P. 37.1(d) (1997).

4. *Howard* also involved an appeal from the denial of postconviction relief, not a recall of the mandate.

Wooten's mitigation case by trial counsel and Rule 37 counsel, James Clawson. This too warrants a recall of the mandate due to the breakdown in the Rule 37 process.

Wooten's core argument on this point is that because of his defective counsel at his Rule 37 hearing in 1997 and on appeal, he has never been able to show either the circuit court or this court how his trial counsel was ineffective in his failure to present mental illness and familial abuse as mitigation evidence at the sentencing phase. That failure, according to Wooten, could easily have converted a life-without-parole sentence to death. Thus, under Wooten's argument, prejudice is easily shown. *See Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).

At trial, Wooten's counsel called two witnesses during the sentencing phase. One witness was the Pope County jailer who testified that Wooten did not have a prior criminal record, that he adapted to jail life, that he was a good prisoner, and that he could work in prison if sentenced to life in prison without parole. The other witness was the person in charge of maintenance at a Russellville public school. He testified that Wooten had worked at the school and was a good worker. That was the sum total of Wooten's mitigation case. Nothing was presented about his abusive childhood and mental handicap during the sentencing phase.

Counsel James Clawson was retained to represent Wooten in his postconviction proceeding. He wrote in Wooten's Rule 37 petition in 1997 as follows:

Counsel, in the penalty phase, called two witnesses. Danny Sorey, jailor, was called to establish that Wooten had no criminal history, and that he is a good prisoner. Stanley Courtwright was called to establish that Wooten was a good worker, who possessed many skills. Counsel has a duty to investigate for penalty phase and failure is ineffective assistance. *Kenley v. State*, 937 F.2d 1298 (C.A.8 1991) [sic]. Counsel was ineffective for failing to offer for the jury's consideration the following mitigating circumstances: counsel did not call wife or friends to establish Wooten's ability to maintain friendship and favorable qualities. These witnesses would have portrayed positive aspects of Wooten's character and demonstrated humanity. Counsel made no argument for mitigation, no plea for mercy, and in short, did absolutely nothing a reasonably competent attorney would have done to provide effective representation in the penalty phase.

Again, the trial court was presented with no evidence about Wooten's traumatic childhood and mental-health issues. In 2003, new counsel for Wooten made an extensive proffer concerning the childhood history and mental-health evidence that a reasonable investigation by trial counsel or Rule 37 counsel would have uncovered and produced. This evidence was proffered in conjunction with counsel's motion to recall the mandate. It included affidavits from psychiatrists, a psychologist, and a mitigation specialist. It also included a declaration from his mother about Wooten's traumatic life history and severe mental problems, none of which was imparted to Wooten's jury at trial or to the court as part of the Rule 37 process. Some of the facts of Wooten's proffered life history include his being the youngest of six children. His father was a severe alcoholic and did not provide for his family. His childhood was distorted by extraordinary violence, mistreatment, and abuse by his alcoholic father. Wooten's father beat his mother in the presence of the children. He beat all the children,

including Wooten. The abuse was constant, extreme, and life threatening. Wooten was a special target because he was small, weak, and mentally slow.

In addition, the proffer states that Wooten has a lifelong history of learning and cognitive problems. He was placed in special education classes for the lowest-functioning students. In spite of his intellectual limitations, he was considered a good worker and was eager to please. He worked at unskilled manual labor jobs.

As a direct result of Wooten's mental disturbances, current counsel propose that his childhood trauma had a lasting, severe, and adverse impact on his mental health, including post-traumatic stress disorder with dissociative features and organic brain damage. Mental health expert testimony would have shown that Wooten, due to his mental disease/defects, lacked the mens rea necessary for murder. The testimony also would have established two statutory mental health-related mitigating circumstances and other nonstatutory mitigating circumstances arising from his impairments and mental health history. Wooten finally proffers that he suffers from brain damage caused by the trauma he endured, including prenatal insults to the brain, birth problems, and significant head injuries.

The United States Supreme Court has emphasized the critical importance of such mitigation evidence in *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), and found prejudice when such evidence is not presented:

> Wiggins' sentencing jury heard only one significant mitigating factor—that Wiggins had no prior convictions. Had the jury been able to place petitioner's excruciating life history on the mitigating side of the scale, there is a reasonable probability that at least one juror would have struck a different balance. *Cf.*

*Borchardt v. State*, 367 Md. 91, 139–140, 786 A.2d 631, 660 (2001) (noting that as long as a single juror concludes that mitigating evidence outweighs aggravating evidence, the death penalty cannot be imposed); App. 369 (instructing the jury: "If you unanimously find that the State has proven by a preponderance of the evidence that the aggravating circumstance does outweigh the mitigating circumstances, then consider whether death is the appropriate sentence").

539 U.S. at 537, 123 S.Ct. 2527.

What is patently clear in all this is that Wooten never had his day in court regarding mitigation evidence related to mental impairment and early family abuse. Trial counsel can certainly be blamed for this, but this failure to investigate trial counsel's oversight as part of the Rule 37 process can be laid squarely at the feet of defective Rule 37 counsel, James Clawson. Because of Clawson's dismal performance in failing to investigate and to assert mental illness and an abusive past, the circuit judge entered a one-page order denying the Rule 37 petition in 1997, without making factual findings.

On appeal of the one-page order to this court, Clawson filed only a five-page argument, again not referencing the absence of the pertinent mitigation evidence, but this court, sua sponte, remanded the matter to the circuit judge for factual findings. The circuit judge held no hearing, but in 2000, he made written findings in an order which did not touch on the absent mitigation evidence because it had not been presented to him. Clawson did not appeal the new order with its findings and did not advise Wooten of his failure to appeal.

The saga of Wooten's experience in post-conviction proceedings with James Clawson at the helm as counsel beginning in 1997 graphically illustrates a complete

breakdown in the criminal-justice process. Not only did Wooten not have effective counsel for his postconviction proceedings, according to the Eighth Circuit Court of Appeals, Clawson perpetrated a fraud "upon Wooten and upon the courts of Arkansas" by not disclosing his criminal convictions (two felony convictions for altering forged documents) and disbarment in the State of Oklahoma. *Wooten v. Norris,* 578 F.3d 767, 771 (8th Cir.2009). As a disbarred attorney in Oklahoma, Clawson was not qualified to represent Wooten in Arkansas, even though the Arkansas disbarment had not yet transpired.

Meanwhile, Clawson was convicted of drunk driving in 1998 in Arkansas, was reprimanded by the Arkansas Professional Conduct Committee for fraudulent conduct in bankruptcy court in 1999, and was convicted in federal court on six counts of bankruptcy fraud in 2001. He was sentenced to eighteen months in federal prison.

Wooten learned of the federal convictions and Clawson's failure to appeal his Rule 37 denial in 2001, and he sought to appeal the denial of postconviction relief belatedly. This court granted a belated appeal and appointed new counsel. Ultimately, this court denied the Rule 37 appeal in 2002, *Wooten v. State,* 351 Ark. 241, 91 S.W.3d 63 (2002), and, in doing so, rejected Wooten's mitigation claim because Clawson had provided nothing to the circuit judge at the 1997 Rule 37 proceeding regarding what mitigation evidence trial counsel should have presented. Without evidence showing how the result at trial would have been different, this court said it could do nothing but affirm the Rule 37 denial. Clearly, Wooten was caught in a Catch–22 dilemma. He could not prevail before this court in 2002 because of Clawson's failure at the Rule 37 hearing to investigate his mental history and family abuse and provide appropriate proof which would highlight trial counsel's failure, but, yet, Clawson's egregious ineptitude in not doing this is precisely the point. Clawson's failure to do his job has become a stumbling block in Wooten's quest to present the relevant mitigation evidence.

Wooten then went to federal court in 2003 with his new counsel and the federal public defender and sought habeas corpus relief under 28 U.S.C. § 2254. For the first time, counsel investigated and supplied the absent mitigation evidence in the form of mental illness, organic brain injury, decreased cognitive functioning, tragic life history, and post-traumatic stress disorder. The federal district court denied the § 2254 petition in 2006 based on the default by Rule 37 counsel in presenting proposed mitigation evidence at the state Rule 37 proceeding in 1997. The matter was then appealed to the Eighth Circuit Court of Appeals.

The Eighth Circuit, in 2009, concluded that it could not grant Wooten relief because this court had denied Wooten's Rule 37 appeal on an adequate and independent state ground. Our denial was based on the procedural default by Clawson at the Rule 37 level in failing to investigate and present Wooten's mental-impairment and childhood-abuse history, which trial counsel should have presented in mitigation. *Wooten v. Norris, supra.* In light of U.S. Supreme Court authority, the Eighth Circuit was foreclosed from considering Clawson's ineffectiveness and his abandonment of Wooten as a cause for excusing default, when there is no right to counsel in postconviction matters and, thus, no constitutional violation. The Catch–22 scenario persists.

The Eighth Circuit, nevertheless, wrote that while it could not grant Wooten relief, the state supreme court could. The Eighth Circuit said: "[T]his appears to be

a case that could satisfy the three factor test in *Lee*." The reference is to *Lee v. State*, 367 Ark. 84, 238 S.W.3d 52 (2006), where this court recalled the mandate and reopened the Rule 37 case because Rule 37 counsel was impaired by alcohol at the Rule 37 hearing and, thus, incompetent. The three factors which were set forth in *Lee* by this court but originally described in *Robbins v. State*, 353 Ark. 556, 114 S.W.3d 217 (2003), were described by the Eighth Circuit as follows:

> The circumstances the court referred to included the facts that [1] a federal court had dismissed a related habeas case based on a failure to exhaust state remedies, [2] the Arkansas Supreme Court had recently decided a case that was "on all fours legally with the issue presented" in *Robbins*, [3] and the case was a capital case that the Arkansas Supreme Court viewed as qualitatively different and worthy of more thorough review.

578 F.3d at 783. In the instant case, a remedy does remain, as was the case in *Lee*, and that is recall of the mandate for the purpose of presenting the absent mitigation evidence to the trial court in a new Rule 37 proceeding.

The Eighth Circuit further underscored the high premium Congress and this court have placed on effective state-court review in death cases, including competent counsel:

> In *Lee*, the [Arkansas Supreme Court] discussed the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132 (1996), and stated, "By this act, Congress chose to restrict federal habeas corpus review in exchange for the states' appointing competent counsel for indigent capital defendants for purposes of state postconviction review." *Lee*, 238 S.W.3d at 56. The court then discussed state procedural rules that Arkansas had put in place to ensure adequate post-conviction representation and review and "*to eliminate the need for multiple federal habeas corpus proceedings in death cases.*"

*Id.* (quotation omitted) (emphasis in original). This court has emphasized the same point in our postconviction death cases. *See, e.g., Lee, supra; Robbins, supra.*

The instant case is analogous to the *Lee* case, as the Eighth Circuit recognized, because of the complete incompetence of Rule 37 counsel and, thus, his complete impairment. To date, this court has recalled our mandate in two death cases related to Rule 37.5 proceedings: *Lee* (inebriated counsel at Rule 37 proceeding) and *Robbins* (failure to pursue inconsistency in sentencing forms). This case easily qualifies for the same relief. In reference to this court's procedure to recall the mandate in exceptional death cases, the Eighth Circuit said in its *Wooten* opinion:

> We welcome and applaud this mechanism [of the Arkansas Supreme Court] given our frequent inability to provide relief in the face of questionable representation by post-conviction counsel. As such, we have a disincentive to use the state's act of grace as a means to reach a case that would otherwise be unreviewable under the restrictions of 28 U.S.C. § 2254.

578 F.3d at 784. The Eighth Circuit, in addition, has underscored Wooten's "compelling" argument in this postconviction case. Judge Myron Bright, in a concurrence in *Wooten*, emphasized "the breakdown" of the Rule 37.5 process at the state level. 578 F.3d at 787.

Again, what is patently obvious in all this is that Wooten has never had his day in court in a postconviction proceeding with competent counsel to present his mitigation evidence on mental illness, organic brain injury, tragic life history, and posttraumatic stress disorder. Neither trial

counsel nor Rule 37 counsel did the necessary investigations into Wooten's background and, thus, failed to develop his readily ascertainable abusive childhood and cognitive disorders. *See Wiggins, supra.* Wooten's Rule 37 counsel was impaired, as was the situation in *Lee,* and he deserves to be heard on this issue.

I would recall the mandate both because of Wooten's (1) lack of verification of the Rule 37 petition, and (2) the deficient presentation of Wooten's mitigation case.

JIM HANNAH, Chief Justice, dissenting.

I respectfully dissent. This court has long recognized its inherent authority to recall its mandate, *see Boynton v. Ashabranner,* 75 Ark. 415, 422, 88 S.W. 1011, 1011 (1905), and that authority is not limited or controlled by the supposed three-factor test noted by the majority. The three-factor test for recalling a mandate set out in *Lee v. State,* 367 Ark. 84, 238 S.W.3d 52 (2006), and noted in the majority opinion and in the concurring opinion, misstates the law. This court in *Lee* derived the three factors from *Robbins v. State,* 353 Ark. 556, 114 S.W.3d 217 (2003); however, in *Robbins,* this court made it clear that each petition to recall a mandate is examined on its own merits—that such cases are "one of a kind, not to be repeated." *Robbins,* 353 Ark. at 564, 114 S.W.3d at 223. A general test cannot be created from a case that clearly states it is one of a kind. Each petition to recall a mandate must be separately examined to determine whether justice requires that the mandate be recalled under the unique facts of that particular case.

Further, neither *Robbins* nor *Lee* is controlling in this case. In *Robbins,* this court recalled the mandate because of fundamental error in the jury's completion of the sentencing forms. This court in *Rob-*

*bins* cited *Willett v. State,* 322 Ark. 613, 911 S.W.2d 937 (1995). In *Willett,* this court reversed a death sentence and remanded for resentencing for the same error. The facts in *Robbins* and *Willett* are not at all similar to the present case. In *Lee,* Rule 37 counsel was intoxicated while representing Lee in the Rule 37 hearing. In recalling the mandate, this court in *Lee* concluded that under "these particular and unusual circumstances," Lee's representation did not meet the qualifications of competency required of counsel appointed under Rule 37.5. *Lee,* 367 Ark. at 93, 238 S.W.3d at 57. It is clear that under *Lee,* where an attorney is intoxicated and unable to represent a client, the client is essentially left without competent counsel. The facts in the present case are not analogous to the facts in *Lee.*

While Wooten argues that he was effectively left without counsel, that argument fails because it is based on his counsel's alleged failure to make the proper choices as to what to put on as evidence in the guilt phase and as mitigation in the penalty phase of trial. The result of this decision is that when an attorney fails to make the proper choices as to what defense to present and what mitigation evidence should be presented, a criminal defendant has been denied competent counsel as required under Rule 37. That is incorrect.

Much is made of Attorney James Clawson's status as a disbarred attorney in Oklahoma and his misconduct in Arkansas. The concurrence's argument is based on the conclusion that Clawson was not qualified to represent Wooten in Arkansas because he had been disbarred in Oklahoma. However, at the time Clawson undertook Wooten's representation, he was a licensed attorney in Arkansas. The concurrence is wrong. The question is not whether Clawson was subject to disbarment in Arkansas based on the disbarment in Oklahoma, but

is whether his conduct in representing Wooten effectively left him without counsel. It also should be noted that the drunk-driving and bankruptcy-fraud issues raised in the concurrence all occurred after the initial denial of Wooten's initial Rule 37 petition on September 11, 1997, and, therefore, after his representation of Wooten.

On appeal, Wooten's case on his Rule 37 petition was reversed and remanded for the |₂₃circuit court to enter written findings as required by Rule 37.3(a), and, if necessary, to hold an evidentiary hearing to make the required findings. *See Wooten v. State*, 338 Ark. 691, 696, 1 S.W.3d 8, 11 (1999). Attorney Alvin Schay replaced Clawson and handled the second appeal after remand on the Rule 37 proceedings. In that appeal, Wooten argued that trial counsel's "failure to put on mitigation evidence constituted ineffective assistance of counsel and left him a virtual stranger to the jury." *Wooten v. State*, 351 Ark. 241, 245, 91 S.W.3d 63, 66 (2002). According to Wooten, this failure to provide adequate mitigation evidence amounted to "a breakdown of the adversarial process." *Id.*, 91 S.W.3d at 66. Wooten is again arguing that there was a breakdown in the proceedings. He also claims that his Rule 37 counsel was incompetent for failing to challenge the lack of mitigation evidence at trial. However, that issue has already been tried in the circuit court and reviewed on appeal. To say that Wooten never had his day in court on mitigation is simply incorrect. Clawson did raise and obtain a ruling in the circuit court on this issue. The appeal was handled by Schay, who has not been accused of failing to represent Wooten or of abandoning him.

The elephant in the room here is the question of why Wooten's defense was misidentification given that the overwhelming evidence identified Wooten as the perpetrator. Eyewitnesses viewed Wooten up close more than once shortly before the crimes were committed. There was pretrial identification of Wooten. Molly Porter described the characteristics of Wooten's eye-teeth in identifying him as the perpetrator. Because Wooten's defense was misidentification, rather than some other defense, such as mental incapacity, the |₂₄impression is that trial counsel was not acting as effective counsel. But, Wooten did not assert the affirmative defense that he lacked the capacity to conform his conduct to the requirements of the law at the time the crimes were committed. Further, he did not assert that he was not competent to stand trial. Competence to stand trial is presumed, and the criminal defendant bears the burden of proving incompetence. *Mask v. State*, 314 Ark. 25, 32, 869 S.W.2d 1, 3 (1993). Thus, competence was not at issue in Wooten's trial.

The United States Court of Appeals for the Eighth Circuit concluded that trial counsel "pursued a theory of mistaken identity." *Wooten v. Norris*, 578 F.3d 767, 770 (8th Cir.2009). In his concurring opinion to that decision, Judge Bright stated that "[Wooten] received poor representation at trial." *Wooten*, 578 F.3d at 786. Implicit in the Eighth Circuit's analysis is the belief that Wooten's attorney should have provided Wooten a very different defense. Failure of counsel to provide a defendant with a different defense from that which an appellate court believes would have been more effective cannot be a basis for recalling a mandate. Certainly *Robbins* and *Lee* do not support recalling a mandate based on such a basis.

It is doubtless that Wooten now regrets trying his case on misidentification, given that he was found guilty. However, the defense presented at trial was the defense that Wooten chose. A careful review of the record in this case reveals that Wooten's defense was entirely consistent from

the moment he first contacted police until this case was submitted to the jury on guilt.

Wooten called law enforcement and reported that someone had shot at him. He then told law enforcement that a person who looked and dressed like him, took his six-wheeler and drove off. Wooten further told law enforcement that he heard shots and shortly thereafter found his six-wheeler. The evidence found in the six-wheeler, according to Wooten, was left there by the man who looked like him and dressed like him. Wooten required that this defense be followed at trial. Contrary to the conclusions of the Eighth Circuit Court of Appeals, the record on direct appeal reveals that counsel carefully prepared and tried the case, but that it was prepared on the theory of misidentification as Wooten required. While that may have been the weakest defense available, it is inaccurate to say that Wooten received poor representation. A review of the record on appeal reveals that counsel undertook substantial work on identification and other issues in preparation for trial. Wooten was able to, and did, participate in his defense. The idea that he was somehow left in the dark is not supported by the record.

The conclusion reached by the majority in this case is also based on the premise that because Wooten's Rule 37.5 petition was not verified, he did not know its contents; therefore, he could not know that the circuit court was not asked to address his trial counsel's alleged ineffectiveness in failing to present evidence of his mental illness and familial abuse in mitigation.[1] This premise is faulty.

Verification is a red herring. Verification by a criminal defendant in a Rule 37 proceeding is not verification that he or she read the petition and concluded that all issues that should be raised, have been raised. Rather, by verifying the Rule 37 petition, the criminal defendant makes a declaration under an oath that the statements that are contained in the petition are true. The affidavit form set out in Arkansas Rule of Criminal Procedure 37.1(c) bears this out, requiring that the petitioner state under oath that "[t]he facts in the petition are true, correct, and complete." "[V]erification is '[a] formal declaration made in the presence of an authorized officer, such as a notary public, or . . . under oath but not in the presence of such an officer, whereby one swears to the truth of the statements in the document.'" *Solis v. State*, 371 Ark. 590, 594, 269 S.W.3d 352, 355 (2007) (quoting *Shaw v. State*, 363 Ark. 156, 157, 211 S.W.3d 506, 507–08 (2005)). Consistent with verification being an oath to the truthfulness of a document, in the context of postconviction proceedings, verification is required so the criminal defendant may be held criminally liable for perjury if the statements in the petition are not true. *See Howard v. State*, 366 Ark. 453, 236 S.W.3d 508 (2006).

Typically, where the petition for postconviction relief is not verified, the denial of relief is simply affirmed by this court based on the lack of verification. *Collins*

---

1. The premise that verification assures this court that the petitioner has seen the petition and confirmed agreement with its contents raises a rather thorny question that threatens longstanding precedent regarding an attorney, as an officer of the court, and his or her representation of a client. The rule is that an attorney who appears in court is presumed to represent the client, and the client bears the burden of proving this not to be the case. *Shields v. QHG of Springdale, Inc.*, 2009 Ark. 88, at 7, 302 S.W.3d 598, 602. A rule that requires a verification to prove that the attorney is presenting in court those issues that the client wishes undermines the attorney-client relationship and the trust that this court has historically placed in attorneys as officers of the court.

*v. State*, 365 Ark. 411, 414, 231 S.W.3d 717, 719 (2006). But, where the death penalty has been imposed, we have remanded the case for the petitioner to file a verified petition in the circuit court and, within fifteen days, to file a supplemental record in this court. *See Howard,* 366 Ark. at 455, 236 S.W.3d at 509. As the court's opinion in *Howard* reveals, the lack of a verification alone does not result in a reversal and remand for a new Rule 37.5 petition and hearing below. There is no support in our precedent for the idea that a mandate should be recalled and a new Rule 37 proceeding be granted in a death case due to a lack of verification by the criminal defendant.

*Collins* does not hold that the failure to verify the Rule 37 petition in a death case is reversible error requiring a new Rule 37 proceeding. In *Collins,* this court held that there was a "breakdown in the postconviction proceedings," but the failure to verify the petition was a single issue among several issues raised in that case. *Collins,* 365 Ark. at 415, 231 S.W.3d at 720. By the time the Rule 37.5 petition in *Collins* was heard below, six years had passed since the mandate issued on his direct appeal. At no time over the course of those years, despite appointment of various counsel, were qualified counsel appointed to represent Collins in a Rule 37.5 proceeding. Additionally, several petitions for postconviction relief were filed, but none were verified by Collins. Collins began filing pro se petitions, which did not comply with the rule. Thereafter, new counsel began to act on Collins's behalf, but no appointment was reflected in the record. Finally, a hearing was held in 2004, but while there was a transcript of the hearing in the record, no petition relating to that hearing was contained in the record. This court concluded that in that hearing, the court was not acting on a written Rule 37.5 petition. This was

confirmed by the circuit court's reference in the hearing to notes and a request that counsel draft a memorandum memorializing the hearing and the points raised. Under such a morass of multiple failures in the Rule 37.5 proceedings, this court concluded that there was a "breakdown in the postconviction proceedings." *Collins,* 365 Ark. at 415, 231 S.W.3d at 720. This court did not hold that, standing alone, a lack of verification in a death case requires reversal and remand for new proceedings. In *Collins,* this court remanded for the appointment of qualified counsel, a verified petition that complied with Rule 37.5, and permitted Collins to raise any and all issues he wished to in a new proceeding. The comparison of Wooten's case to Collins's case is not valid.

Unlike Collins and Lee, Wooten has had an opportunity to present issues on postconviction relief. Wooten offered mitigation evidence at trial. The focus of the testimony offered from the assistant jail administrator was that Wooten had adjusted to incarceration and would do well working a job within the prison system if he were sentenced to life without parole. Stanley Courtwright similarly testified that Wooten had been a good worker. While the Eighth Circuit Court of Appeals is critical of the brevity of the mitigation evidence, it is not questioned that the decision of what to present was considered, including the credibility of the witnesses. Further, the issue of whether trial counsel was ineffective in the choice of mitigation evidence was raised by attorney Alvin Schay in Wooten's postconviction proceedings, and postconviction relief was denied.

Considering the outcome in this case, a different trial strategy might have been more effective. However, that is not a basis for the extraordinary relief sought. It cannot be the basis for recalling the mandate and providing a new Rule 37

petition. *Lee* clearly limited such relief to a situation where the criminal defendant was effectively left without counsel. Wooten had counsel in Clawson and in Schay. The decision reached in the present case opens the door in every death-penalty case to grant relief based on a failure of counsel to pursue a different strategy at trial. Wooten rigidly held himself and his counsel to the theory that it was another who committed the crimes. Clearly, he was unwilling to admit to the commission of the crimes, which would have been required for him to avail himself of the defense that his attorneys are now being labeled as grossly incompetent for failing to provide. Counsel certainly could not have simultaneously pursued the defenses of misidentification and lack of capacity. Wooten chose to defend on identity. The consequences of that choice are now manifest. The evidence of identification was overwhelming, and Wooten has shown no prejudice.

Today, the majority recalls a mandate and permits Wooten to file a second Rule 37 petition because, as of this date, no verified petition has been filed. A hearing and appeal will presumably follow. *Porter v. State*, 339 Ark. 15, 2 S.W.3d 73 (1999), is cited in support of the decision to permit a second Rule 37 petition. However, *Porter* is not on point. First, *Porter* does not concern the lack of a verification; second, the relief granted was not the opportunity to file a second Rule 37 petition. In *Porter*, a death-penalty case, Porter was found to have been without counsel at the time the Rule 37 petition was due, which was good cause for his failure to timely file a petition. The relief sought was to file a Rule 37 petition in the first instance.

The law on point in the present case is found in *Howard*. The relief due Wooten, for an unverified Rule 37 petition in a death-penalty case, is to remand for him to verify the existing petition already filed in this case and leave to file a supplemental record in this court to include that verified petition in the record on appeal. That would entitle Wooten to have his appeal from the Rule 37 hearing heard on appeal by this court and avoid a perfunctory affirmance based on the lack of verification. However, Wooten's appeal was heard by this court, so the issue of the lack of verification is moot. The majority is creating new law on verification that is cut out of whole cloth.

Wooten was convicted of capital murder, criminal attempt to commit murder, and aggravated assault for an incident that occurred over sixteen years ago. He timely filed a Rule 37 petition and then argued that his counsel at trial was ineffective for failure to pursue the correct defense and for putting on mitigation evidence that left him a virtual stranger before the jury. He alleged there was a breakdown in the Rule 37 process. Those issues have already been litigated and reviewed on appeal. The majority, in reaching its conclusion, ignores postconviction procedures and our standard of review. Certainly, this court has the inherent authority to recall a mandate. But, this case is not *Robbins* or *Lee*. It is not a case where justice requires the recalling of the mandate. I would deny the petition.

WILLS, J., joins.