Alvin Bernal JACKSON *v.* STATE of Arkansas

CR 90-257                              811 S.W.2d 299

Supreme Court of Arkansas
Opinion delivered June 17, 1991

*William R. Simpson, Jr.*, Public Defender, *Thomas B. Devine III*, Deputy Public Defender, *Jerry J. Sallings*, Deputy Public Defender, by: *Didi H. Sallings*, Deputy Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Senior Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. Appellant Alvin Bernal Jackson was charged with the capital felony murder of Charles Colclasure during an aggravated robbery which occurred on July 30, 1989. Additional counts of the information alleged burglary and theft of property committed on the same date. Other counts included two attempted capital murders on August 2, 1989. The trial court granted a motion to sever the July 30 offenses from the August 2 offenses. Jackson was tried and convicted of capital felony murder, burglary, and theft of property and sentenced to life without parole. Sentences on the lesser offenses were enhanced by reason of three prior felony convictions.

Alvin Jackson appeals from the judgment, asserting that the trial court erred in denying his motion to suppress statements he gave to the police while in custody and used against him in the

trial. Finding no error, we affirm the judgment of conviction.

This case involves a series of incidents in an area of Little Rock known as the "East End." The incidents occurred between July 29 and August 2 of 1989. Subsequently they were found to be interrelated. On July 29 there was a disturbance at National By-Products involving two black males using a .25 calibre pistol. On July 30, a Sunday, Mr. Charles Colclasure went to his office at International Business Forms (IBF) at 1600 East 26th Street in Little Rock but never returned home. On July 31 his wife reported his disappearance to the Little Rock police. Later that day Mr. Colclasure's body was found in the Arkansas River some two or three miles from IBF. He had been shot numerous times with rat shot, but the cause of death was determined later to be a traumatic injury. On August 1 Colclasure's 1985 gray Buick Riveria was found in the 500 block of Bender Street in the East End.

In the early morning of August 2 a guard at Little Rock Crate & Basket Company in the East End discovered two black males inside a security fence engaged in an attempted burglary. Shots were exchanged as the two men fled. One of the men was firing rat shot.

At 1:17 p.m. on August 2 the police responded to a disturbance call from Carlon Marshall at 809 Carson in the East End. He stated that his uncle, Alvin Jackson, and brother, Charles Jackson, had been chasing him with a weapon. He explained that he had been riding with them in a grey Buick automobile which had been impounded the previous day. He told the police that Alvin and Charles Jackson had killed the man who owned the car. Marshall gave the police a description of Alvin and Charles Jackson and both were apprehended in the area within the hour. As Alvin Jackson was being apprehended the police were informed by radio of seven outstanding warrants against him—one for failure to appear, one for fleeing from arrest and five for traffic offenses.

During the afternoon Alvin and Charles Jackson were interrogated separately. Alvin Jackson gave a statement denying any involvement in the murder of Charles Colclasure but admitting that he had driven the Buick, which he said had been given to him by an acquaintance named Eric. During the course of the

interrogation the police obtained a television set from Alvin Jackson's residence which belonged to IBF. In the late afternoon or early evening Alvin Jackson admitted having robbed and killed Charles Colclasure. He confessed soon thereafter to the episode at the Little Rock Crate & Basket Company.

Appellant's theory of error is threefold: One, his statements were the proximate result of an illegal arrest, there being no probable cause to charge him; two, his statements came after he had invoked his right to remain silent; and, three, he did not knowingly and intelligently waive his Fifth Amendment rights against self-incrimination. We can find no merit in the arguments.

■ Probable cause for appellant's arrest can be grounded on one or all of three factors. Carlon Marshall reported to the police that Alvin Jackson had accosted him with a weapon, a direct accusation of a crime by the purported victim. W. LaFave, *Search and Seizure* § 3.4 (1987); J. Hall, *Search and Seizure* § 5.31 at 224 (Supp. 1988). Marshall also reported to the police that appellant and Charles Jackson had murdered Charles Colclasure, whom the police by then knew to have been the victim of a homicide. Lastly, the police learned in timely fashion that appellant was named in seven warrants of arrest, the validity of which is not challenged. Viewed separately or collectively, the police had ample reason to take Alvin Jackson into custody based on information they had no reason to question. *Woodall* v. *State*, 260 Ark. 786, 543 S.W.2d 957 (1976).

Turning to the allegation that the statements were obtained after appellant asserted his right to remain silent, Jackson points out that the first statement he gave the police admitted only that he and Charles had been in the Colclasure automobile. As the statement was being concluded by the interrogating officer he asked Jackson, "Okay. Is there anything else you want to say?" Jackson said, "No, sir."

■ Appellant insists that by his response to the final question he made it clear that he was involving his right to remain silent, that under the rationale of *Miranda* v. *Arizona*, 384 U.S. 436 (1966), he was entitled to have that right scrupulously honored. He urges that when an accused in custody indicates *in any manner* that he does not wish to submit to further interroga-

tion, the police may not continue to question. But here it is entirely clear, as the trial court found, that rather than invoking his right to remain silent, the appellant was merely declaring that there was nothing he wished to add to his statement. Similar contentions have been considered by other courts and found wanting: *State* v. *Lawson*, 144 Ariz. 547, 698 P.2d 1266 (1985); *Commonwealth* v. *Messere*, 14 Mass. App. 1, 436 N.E.2d 414 (1982).

Finally, appellant maintains that from a totality of the circumstances it is evident he did not knowingly and intelligently waive his Fifth Amendment rights against self-incrimination. He cites the testimony of Dr. Glenn White, a clinical psychologist, who administered tests to the appellant to gauge his intelligence, that he determined Jackson's IQ to be borderline, or possibly mildly retarded. He testified that Jackson's school records and 1986 IQ test of 74 more nearly reflected Jackson's true intelligence, which he estimated to be between 74 and 81.

We have reviewed the testimony elicited at the omnibus hearing independently of the trial court's findings and do not find ourselves at odds with the trial court. *See Giles* v. *State*, 261 Ark. 413, 549 S.W.2d 479 (1977). There is the testimony of the appellant that an officer shoved him against the police car when he was being arrested and his assertion that he was promised a measure of leniency if he would confess, but we cannot say those claims are persuasive against the proof to the contrary. There were issues of credibility and the trial court's findings are largely determinative. *Harvey* v. *State*, 272 Ark. 19, 611 S.W.2d 762 (1981).

Under Ark. Code Ann. § 16-91-113 (1987), as put into effect by our Rule 11(f), we consider all objections brought to our attention in the abstracts and briefs in appeals from a sentence of life imprisonment or death. In this case we find no prejudicial error in the points argued or in the other objections abstracted for review.