Alvin Bernal JACKSON, a/k/a Rahman X *v.*
STATE of Arkansas

CR 02-104 105 S.W.3d 352

Supreme Court of Arkansas
Opinion delivered March 20, 2003

[Substituted opinion upon denial of rehearing
delivered April 24, 2003]

*Jeff Rosenzweig*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

RAY THORNTON, Justice. Alvin Bernal Jackson, a/k/a Rahman X, was convicted of capital murder in Pulaski County Circuit Court and was sentenced to life imprisonment

without parole. We affirmed Mr. Jackson's sentence in *Jackson v. State*, 306 Ark. 70, 811 S.W.2d 299 (1991). While serving the above sentence, Mr. Jackson was charged with capital murder in the death of Scott Grimes, a correctional officer at the Maximum Security Unit in Jefferson County. Mr. Jackson was tried in Jefferson County Circuit Court and found guilty. During the sentencing phase of the trial, the trial court found an error on the verdict form used by the jury to determine the presence and weight of aggravating and mitigating circumstances. The jury had incorrectly marked Verdict Form 2 D to indicate that "no evidence of mitigating circumstances was presented by either party during any portion of the trial." Form 2 D further provided as follows: "(Check only if no evidence was presented. If evidence was presented but the jury agreed that it was not mitigating, check section C.)" The trial judge brought the problem to the jury's attention and directed them to return to the jury room to correct the form. Mr. Jackson's counsel did not object to the judge's action in returning the forms to the jury for correction, nor was there an objection to the judge's specific instruction that Form 2 D could not be checked because it was clear that some evidence of mitigating circumstances had been presented for consideration by the jury. After their return to the jury room, only a few minutes passed before the jury returned to open court with completed forms. The jury had deleted the check mark previously affixed to Form 2 D that had stated that no evidence of any mitigating circumstances had been presented but rather checked Form 2 C, as follows:

( X )THERE WAS EVIDENCE OF THE FOLLOWING CIRCUMSTANCES, BUT THE JURY WAS UNANIMOUSLY AGREED THAT THEY WERE NOT MITIGATING CIRCUMSTANCES:

( ) THE CAPITAL MURDER WAS COMMITTED WHILE ALVIN JACKSON WAS UNDER EXTREME MENTAL OR EMOTIONAL DISTURBANCE.

( ) THE CAPITAL MURDER WAS COMMITTED WHILE THE CAPACITY OF ALVIN JACKSON TO APPRECIATE THE WRONGFULNESS OF HIS CONDUCT OR TO CONFORM HIS CONDUCT TO THE REQUIREMENTS OF THE LAW WAS IMPAIRED AS A RESULT OF MENTAL DISEASE,

( ) ALVIN JACKSON HAD A HISTORY OF MENTAL RETARDATION.

The trial court noted that while the first paragraph of Form 2 C was checked, no check marks were made to any of the three listed mitigators set forth following the first paragraph of Form 2 C. The trial court further noted that Form 3, the weighing of aggravating circumstances and mitigating circumstances, required by Ark. Code Ann. § 5-4-603 (Repl. 1997), had been unanimously signed by the jury. Counsel for defendant did not object to the form or substance of Forms 1, 2, or 3, nor to the conclusion that the jury unanimously sentenced the defendant to death. We affirmed. *Jackson v. State*, 330 Ark. 126, 954 S.W.2d 894 (1997)(*"Jackson I"*). The trial court's effort to correct Form 2 on mitigating circumstances was before this court for review in the appeal on the merits. *Jackson I, supra.* We also conducted an Ark. Sup. Ct. R. 4-3(h) review in *Jackson I*. In the event that the judge's effort to correct deficiencies in filling out Form 2 constituted an error that rose to the level where our review was required notwithstanding the lack of a contemporaneous objection, in accordance with *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980), we considered that issue in our review on the merits.

Mr. Jackson then pursued a Rule 37 appeal in his death-penalty case. After relieving the attorney originally appointed to Mr. Jackson because of her possible witness status, attorney Jeff Rosenzweig was appointed and given ninety days from the entry of the order, pursuant to Arkansas Rule of Criminal Procedure 37.5(e). The State argued that the petition was untimely filed, and the lower court agreed and dismissed the case. The order was entered on November 19, 1998. The issue of whether the petition was timely filed was appealed, and we reversed and remanded the matter back to the trial court. *Jackson v. State*, 343 Ark. 613, 37 S.W.3d 595 (2001), (*"Jackson II"*). Upon remand, the trial court denied Mr. Jackson a hearing and entered an order finding that Jackson was conclusively not entitled to relief on any point. The trial court entered the order on October 9, 2001, and from that order comes this appeal. We hold that the trial court properly denied Mr. Jackson's petition for Rule 37 relief, and we affirm.

 This court does not reverse a circuit court's decision to deny post conviction relief unless that decision was clearly erroneous or clearly against the preponderance of the evidence. *Noel*

*v. State*, 342 Ark. 35, 26 S.W.3d 123 (2000). In reviewing a petition for postconviction relief under Rule 37, we do not reexamine issues raised and resolved in the direct appeal. *Davis v. State*, 345 Ark. 161, 44 S.W.3d 726 (2001). A Rule 37 proceeding is directed toward determining whether counsel was so deficient in performance of his duties that the defendant was denied his right to the effective legal representation guaranteed by the Sixth Amendment. *Id.* In an appeal from a trial court's denial of a Rule 37 petition, the question presented to us is whether, based on the totality of the evidence, the trial court clearly erred in holding that counsel's performance was not ineffective under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). We have often applied the standard set forth in *Strickland, supra*, to determine ineffective assistance of counsel:

> [T]he petitioner must show first that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment. A court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Second, the petitioner must show that the deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious as to deprive the petitioner of a fair trial. Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. The petitioner must show there is a reasonable probability that, but for counsel's errors, the fact finder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the errors. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial.

*Cothren v. State*, 344 Ark. 697, 42 S.W3d 543 (2001). The language, "the outcome of the trial," refers not only to the finding of guilt or innocence, but to possible prejudice in the sentencing. *Lasiter v. State*, 290 Ark. 96, 717 S.W.2d 198 (1986). In making a determination of ineffective assistance of counsel, ·the totality of the evidence must be considered. *Id.* Furthermore, trial strategy is not a basis for postconviction relief. *Wooten v. State*, 352 Ark. 241, 91 S.W.3d 63 (2002).

Mr. Jackson states his first point on appeal as "whether the circuit court originally erred in an improper incursion into the jury's

role in a misguided attempt to cure obvious penalty phase error." The jury was required to fill out three different forms relating to sentencing. Form 1 related to the jury's findings concerning the possible aggravating circumstances. The jury found that both aggravating circumstances presented to them by the State existed. Form 2 contained four parts: A, B, C, and D. The instructions directed that if they found that specific mitigating circumstances existed at the time of the murder, they should make marks in the available spaces on Form 2 A. The jury checked none of the spaces. Form 2 B instructed that if one or more members of the jury believed that some of the mitigating circumstances existed but the jury was not unanimous, they should check the available spaces. The jury checked none of the spaces. Form 2 C provided spaces for the jury to mark if they found that there was mitigating evidence presented, but that they unanimously agreed that they were not mitigating circumstances, then underneath that statement, the possible mitigating circumstances were written out with spaces next to them for the jury to make marks indicating those circumstances were presented. Originally, Form 2 C was not marked by the jury. Instead, the jury had marked Form 2 D, which stated that no mitigating circumstances were presented by either party during any portion of the trial. Furthermore, Form 2 D reminded jurors that if mitigating evidence was presented though it was not mitigating, they were to required to check Form 2 C.

When the jury first returned the verdict forms, the circuit court judge ascertained that they had incorrectly filled out the sentencing portion of the forms, checking Form 2 D. Rather than allow the jury to create an error as a matter of law, he instructed them to return to the jury room and correct their mistake. The following colloquy occurred:

> THE COURT: Ms. Rideau, has the jury arrived at a recommended sentence?
>
> FOREPERSON RIDEAU: Yes, sir.
>
> THE COURT: Would you pass it up to the bailiff, please. (Form handed to the Court.) Ms. Rideau, on the — on Form 2, you have checked paragraph (d) and signed this. I was, perhaps, unclear in my instructions to you. Paragraph (d) says that no evidence of mitigating circumstances was presented by either party during any portion of

the trial. That was included in the form. It was to be checked only if no evidence. Certainly, some evidence was presented. And it goes to say, if evidence was presented but the jury agreed that it was not mitigating, check section (c). I'm going to ask you if you will, please, for y'all to retire to the jury room and complete Form 2 in accordance with the instructions contained on that if you would, please. I'm going to send you back with all of the forms you just returned. And if you would, please make that correction. I'll just tell you as a matter of law Form 2, section (d) should not be checked because there was, in fact, evidence submitted as to mitigating circumstances.

Would the jury retire then to the jury room for the correction of Form 2, please.

The court then reviewed the forms and the following colloquy occurred:

THE COURT: Form 2 is executed paragraph (c). There was evidence of the following circumstances but the jury unanimously agreed that they were not mitigating circumstances. There are none checked. But there is a signature line on the fourth page by you Ms. Rideau. Is that the unanimous finding of the jury?

FOREPERSON RIDEAU: Yes, sir.

We agree with the concurring opinion's view that any confusion concerning Form 2 C does not show that the jury failed to properly consider mitigating circumstances in accordance with our statutory requirements. Trial counsel declined to poll the jury when asked by the court, stating, "Not with the signatures, your honor." We cannot conclude that this action by counsel constituted an ineffective performance of counsel under the *Strickland* test.

In *Jones v. State*, 329 Ark. 62, 947S.W.339 (1997), on direct appeal, we faced a similar issue and held that though the jury filled out the verdict form incorrectly, there was no error when the jury found that the aggravating circumstances outweighed the mitigating circumstances in accordance with Ark. Code Ann. § 5-4-603 (Repl. 1997). In *Jones*, we held that any inconsistencies by the

jury in completing the form pertaining to mitigating factors constituted harmless error. *Id.* We distinguished *Jones, supra,* from *Camargo v. State,* 327 Ark. 631, 940 S.W.2d 464 (1997), where we reversed a sentence of death and remanded for resentencing based on the jury's failure to return a unanimous written finding that the aggravating circumstances warranted a sentence of death. *Id.* In *Camargo,* the jury did not comply with the requirements of Ark. Code Ann. § 5-4-603, whereas in *Jones, supra,* and the instant case, the statutory requirements were satisfied.

■ Mr. Jackson claims that the trial court improperly directed the jury to find that there were no mitigating circumstances and that they had no choice but to give a sentence of death. We disagree. Any completion of Form 2 following the trial court's action in returning the forms for further consideration does not reflect a failure by the jury to properly consider mitigating circumstances. We note that Form 3 setting out the statutory requirements for weighing aggravating circumstances and mitigating circumstances was correctly filled out by the jury. The statute, codified at Arkansas Code Annotated § 5-4-603, requires that

> (a) The jury shall impose a sentence of death if it unanimously returns written findings that:
> (1) Aggravating circumstances exist beyond a reasonable doubt; and
> (2) Aggravating circumstances outweigh beyond a reasonable doubt all mitigating circumstances found to exist; and
> (3) Aggravating circumstances justify a sentence of death beyond a reasonable doubt.
> (b) The jury shall impose a sentence of life imprisonment without parole if it finds that:
> (1) Aggravating circumstances do not exist beyond a reasonable doubt; or
> (2) Aggravating circumstances do not outweigh beyond a reasonable doubt all mitigating circumstances found to exist; or
> (3) Aggravating circumstances do not justify a sentence of death beyond a reasonable doubt.
> (c) If the jury does not make all findings required by subsection (a) of this section, the court shall impose a sentence of life imprisonment without parole.

*Id.* The statute requires that the jury vote unanimously and perform a weighing test of the mitigating factors against the aggravating factors before it can impose the death penalty.

■ Here, the trial court did not direct the jury to impose the death penalty. Instead, the court properly instructed the jury to go back into the jury room and correct an error made in completing the form.

■ Mr. Jackson presents a secondary issue within his first point on appeal as whether the court erred in denying relief and in denying Jackson a hearing on the point. We do not reach this issue because we find no error in the court's action to require the jury to correct an erroneous finding in Form 2 D. Because there was no error, the issue of whether the court properly denied a hearing on the matter is moot.

Mr. Jackson presents as his second point on appeal as whether his trial counsel were ineffective by their failure to present an adequate penalty-phase defense, and whether the trial court erred in denying a hearing in its application of the law. We find no error and affirm.

Mr. Jackson acknowledges that his counsel did attempt a penalty-phase defense. Mr. Jackson, an inmate at the Department of Correction serving a life sentence for capital murder, made a "shank" and escaped from his cell. A lifelong friend of his, Kia Duncan, testified that Mr. Jackson told her that he had not intended to kill the officer, but the inmate the officer was escorting. Mr. Jackson told her that "he had kind of worked his cell door loose to get to the inmate . . . [Mr. Jackson] said the inmate had done something to one of his Muslim friends, and that the Muslim friend asked him to take care of the situation for him[.]" Mr. Jackson admitted to Ms. Duncan that he had premeditated his actions. Phone records confirmed that Ms. Duncan and Mr. Jackson had talked on the day that she testified they had.

Tony Tableriou, a former employee at the Department of Corrections, testified that on the day of the crime, he saw Mr. Jackson "sliding through the door of his cell." Mr. Tableriou yelled to the victim, and saw Sergeant Grimes and the inmate Mr. Jackson was allegedly intending to kill standing by a staircase. Mr. Tableriou witnessed Sergeant Grimes physically restrain Mr. Jackson and saw something in Mr. Jackson's hand. Mr. Tableriou tried to get the shank out of Mr. Jackson's hand, and they all fell to the ground. When Mr. Jackson had been restrained, Mr. Tableriou saw that Sergeant Grimes was kneeling on the ground with two tears near his

armpit, then he fell down and died. Mr. Tableriou's testimony was corroborated by another officer, Gary Hill.

During the penalty phase, trial counsel called Mr. Jackson's twin brother, Calvin Jackson, in mitigation. Calvin promised that if the jury gave his brother a life sentence, he and his mother would continue to visit appellant. Calvin recounted his twin brother's troubled youth and that when his brother had been on medication, his behavioral problems seemed to subside. Calvin testified that his brother had an uncontrollable temper, and that the medication had seemed to help him control it, suggesting that there was a possible mental condition to blame for Mr. Jackson's behavior. In contrast, Calvin offered testimony that though they had grown up in the same house, under the same conditions, that he had very little trouble in his life and that he had a successful career in restaurant management.

■■ Trial counsel's decisions as to which witnesses should be called during the penalty phase is a matter of trial strategy and we have held that matters of trial strategy are not grounds for a showing of ineffective assistance of counsel. *Coulter v. State*, 343 Ark. 22, 31 S.W.2d 826 (2000). Even though another attorney may have chosen a different course, trial strategy, even if it proves unsuccessful, is a matter of professional judgment. *Camargo, supra.* Furthermore, in light of the totality of evidence presented, counsel's performance during the penalty phase was not deficient, and Mr. Jackson's contention that trial counsel should have used the same strategy in his second murder trial as that used in his first murder trial fails. Mr. Jackson, already serving a life sentence for the first murder, planned and committed another murder. The jury was made aware that this was Mr. Jackson's second murder charge and to contend that the strategy during the penalty phase should be the same for two substantially different murders must fail. Accordingly, on this point, we affirm the denial of Rule 37 relief.

Mr. Jackson's third point on appeal is whether trial counsel was ineffective in failing to seek further examination to determine if Mr. Jackson had a mental illness, and whether the denial of relief was based on a faulty understanding of the law. We find no error and affirm.

 Mr. Jackson makes only conclusory statements concerning whether further examination might have led to the determination that an organic cause of a mental illness was present. Mr. Jackson explains that if CT, PET or MRI tests had been performed, the tests might have resulted in some showing of an organic cause of some mental illness. Conclusory statements cannot be the basis of postconviction relief. *Sanford v. State*, 342 Ark. 22, 25 S.W. 3d 414 (2000). We will not grant postconviction relief for ineffective assistance of counsel where the petitioner fails to show what the omitted testimony or other evidence was and how it would have changed the outcome. *Camargo, supra.* In the absence of any showing of what the evidence concerning the results of medical testing might have proven, we affirm.

Mr. Jackson's fourth point on appeal is whether trial counsel was ineffective in not objecting to a misstatement of the law by the prosecuting attorney, and whether the trial court's analysis of the law concerning mitigating circumstances was incorrect as a matter of law. We find no error in either the prosecutor's statement of the law or the trial court's interpretation of the law, and therefore, we affirm on this point.

The alleged misstatement of the law by the prosecutor was made during the closing arguments of the penalty phase of the trial. Mr. Jackson asserts that the following statement caused the jury to reject the evidence of mitigating circumstances:

> [H]e's talking about this case and he's talking about the murder of Scott Grimes, was able to appreciate the criminality of his conduct and conform his conduct to the requirements of the law at the time of the alleged crime. That's the psychological examiner's opinion. That mitigating circumstances wouldn't apply.

Mr. Jackson is incorrect. The prosecutor did not misstate the law, and therefore, it was not error for Mr. Jackson's attorney to fail to object.

 Failure to make a meritless objection is not an instance of ineffective assistance of counsel. *Lee v. State*, 343 Ark. 702, 38 S.W.3d 348 (2001). The prosecutor stated the elements of Ark. Code Ann. 5-4-605(3), which states the elements necessary for finding mitigating circumstances due to mental impairment: (1) the ability to appreciate the wrongfulness of the conduct, or (2) the ability to conform conduct to the require-

ments of the law at the time of the commitment of the crime. *Id.* The prosecutor then reminded the jury of the psychological examiner's expert opinion of Mr. Jackson's ability to appreciate the criminality of his conduct and to conform his conduct to the law. The prosecutor then explained that because Mr. Jackson was able to do both of these things the mitigating circumstances presented by the defense would not apply. The State was permissibly responding to Mr. Jackson's claim of the presence of mitigating circumstances by impairment due to mental disease or defect. Thus, the trial court's assessment that the State did not misstate the law concerning Ark. Code Ann. § 5-4-605(3) was proper. We find no error and affirm.

 Mr. Jackson's fifth point on appeal is whether trial counsel were ineffective in failing to appropriately argue objections to victim-impact evidence. We decline to reach this issue on the grounds that it was not preserved for appeal. We previously held that this claim was procedurally barred because Mr. Jackson did not obtain a ruling from the trial court concerning the constitutionality of victim-impact evidence. *Jackson I, supra.* Furthermore, had the issue been preserved, Mr. Jackson's argument is without merit. We have rejected claims of error because of a failure to object to victim-impact evidence several times. *See, Kemp v. State,* 324 Ark. 178, 919 S.W.2d 943 *cert.* denied, 519 U.S. 892 (1996); *Nooner v. State,* 322 Ark. 87, 907 S.W.2d 677 (1995), *cert.* denied 517 U.S. 1143 (1996). The United States Supreme Court has also held that victim-impact evidence is permissible. *See Payne v. Tennessee,* 501 U.S. 808, (1991).

 Because we have determined that the trial court order denying Rule 37 relief was not clearly erroneous or clearly against the preponderance of the evidence, we affirm.

IMBER, J., concurs.

ANNABELLE CLINTON IMBER, Justice, concurring. I concur in the judgment that this case should be affirmed, but I write to clarify an issue with regard to the sentencing forms filled out by the jury. The majority seems to say that Form 2 C was filled out incorrectly by the jury that sentenced Mr. Jackson to death, and cites to *Jones v. State,* 329 Ark. 62, 947 S.W.2d 339 (1997), for the proposition that the only sentencing form needed to justify a death sentence is Form 3, which sets out the statutory

requirements of Ark. Code Ann. § 5-4-603 (Repl. 1997). I must respectfully disagree with the majority on two points.

First, this court did find in *Jones, supra,* that the jury correctly completed Form 3, and we held that this satisfied the statutory requirement that the jury must find aggravating circumstances outweigh mitigating circumstances in order to return a sentence of death. However, that holding hinged on the fact that the jury *considered* mitigation in its decision, as evidenced by the jury's completion of Form 2, albeit incorrectly. This point was crucial to our decision in *Jones,* because to decide that Form 3 alone is enough to justify a death sentence would be to render Form 2 superfluous. The three forms must be read together — Form 1, which considers aggravators, Form 2, which considers mitigators, and Form 3, which balances the aggravators against the mitigators. Only because the *Jones* jury had considered mitigation on its Form 2, was the correctly completed Form 3 enough to satisfy the statutory requirements. Form 3, alone, would not have been enough to meet the requirements.

Second, I must disagree with the majority's implication that Form 2 was incorrectly filled out by the *Jackson* jury. The jury originally checked Section D of Form 2, which stated that no evidence of mitigation was presented by either party during the trial. Because evidence of mitigation had been presented, the trial court realized the mistake and correctly instructed the jury to return to the jury room and correct the form. Form 2 directed the jury to leave Section D blank if there was any evidence of mitigation; and, if the evidence of mitigation was not enough to constitute mitigating circumstances, Section C was to be checked. The jury did exactly as instructed by Form 2 and checked the box at the top of Form 2 Section C, that read as follows:

> C. ( ) There was evidence of the following circumstances, but the jury unanimously agreed that they were not mitigating circumstances

This section was then followed by a list of three possible mitigating circumstances. No instruction on the form stated that it was necessary to check off the individual mitigators. Presumably, if evidence of only one or two had been found, those mitigators would have needed a check mark to distinguish them from the others. In the instant case, the jury only checked the space beside

the letter "C," and then signed the form. Form 2 as filled out by the *Jackson* jury can thus be read as a statement by the jury that, while evidence of all three of the listed mitigators was presented, none of them were considered by the jury to rise to the level of mitigating circumstances. I cannot say that Form 2 was completed incorrectly by the *Jackson* jury, when there was no instruction on the form that required the jury to check anything other than Section C, which they did.

Because I believe that the jury was required to complete all three forms, not merely Form 3, and because I believe the jury correctly completed Form 2 pursuant to the instructions by the judge and those on the form itself, I concur with the majority in affirming the trial court's order denying postconviction relief under Ark. R. Crim P. 37 (2003).