JIM HANNAH, Chief Justice, dissenting. IsaBecause there is no written proof in the record of this case that the jury considered the evidence of mitigating circumstances, I must respectfully dissent. A jury must be able to consider, and may not refuse to consider, any relevant mitigating evidence offered by a defendant as a basis for a sentence less than death. See Buchanan v. Angelone, 522 U.S. 269, 276, 118 S.Ct. 757, 139 L.Ed.2d 702 (1998). “The relevance exists even if the factfinder fails to be persuaded by that evidence.” McKoy v. North Carolina, 494 U.S. 433, 440, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990) (quoting State v. McKoy, 323 N.C. 1, 372 S.E.2d 12, 45 (1988) (Exum, C.J., dissenting)). Although a jury “may determine the weight to be given relevant mitigating evidence,” it “may not give [the evidence] no weight by excluding such evidence from [its] consideration.” Eddings v. Oklahoma, 455 U.S. 104, 114-15, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). “Not only [does] the Eighth Amendment require that capital-sentencing schemes permit the defendant to present any relevant mitigating evidence, but ‘Lockett [v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) ] requires the sentencer to listen’ to that evidence.” Sumner v. Shuman, 483 U.S. 66, 76, 107 S.Ct. 2716, 97 L.Ed.2d 56 (1987) (quoting Eddings, 455 U.S. at 115 n. 10, 102 S.Ct. 869); see also Sheridan v. State, 313 Ark. 23, 38, 852 S.W.2d 772, 779 (1993) (“Not only must relevant mitigating evidence be admitted, it must be actually considered.”). I wish to make clear that no fault lies with the jury in this case. For many years, this court failed to recognize the lack of clarity in Form 2 of the capital-murder verdict forms,[1] | S4and this court erroneously applied the law to the facts of cases involving verdict-form challenges. Thus, the fault lies with this court, and we must correct our errors. Our decisions in Steven Hill v. State, 289 Ark. 387, 713 S.W.2d 233 (1986), and Darrel Hill v. State, 331 Ark. 312, 962 S.W.2d 762 (1998), were wrong. I believe that both Hill cases were implicitly overruled by Anderson v. State, 357 Ark. 180, 163 S.W.3d 333 (2004). Lest there be any confusion, we should explicitly overrule them today. As we stated in Brickhouse v. Hill, 167 Ark. 513, 268 S.W. 865 (1925), If ... a decision or series of decisions are clearly incorrect, either through a mistaken conception of the law, or through a misapplication of the law to the facts, and no injurious results would follow from their overthrow, and especially if they were injurious or unjust in their operation, it is the duty of the court to overrule such cases. Hasty or crude decisions should be examined without fear and reversed without reluctance. Id. at 522-23, 268 S.W. at 868 (emphasis added). The court’s errors in Steven Hill and Darrel Hill were a result of the misapplication of the law to the facts of those cases. In Steven Hill, the appellant had turned eighteen about two months before the crimes were committed; this evidence was presented to the jury and was submitted on the verdict form as a mitigating circumstance. 289 Ark. at 396, 713 S.W.2d at 237. The jury marked Form 2 D, which stated that “[tjhere was no evidence of any |35mitigating circumstance.” Id., 713 S.W.2d at 237. Because the jury did not mark Form 2 C, which stated that “[tjhere was evidence of ... mitigating circumstances, but the jury unanimously agreed that they did not exist at the time of the murder,” the appellant contended that the jury improperly failed to consider the evidence of his youth. Id., 713 S.W.2d at 237.[2] We stated: In Giles v. State, 261 Ark. 413, 549 S.W.2d 479 (1977) ... the jury found that the youth of the appellant, who was apparently 19 or 20 when the crime was committed, was not a mitigating factor. This court affirmed the jury’s finding, stating, “[a]ny hard and fast rule as to age would tend to defeat the ends of justice, so the term youth must be considered as relative and this factor weighed in the light of varying conditions and circumstances.” Giles, supra; see also Neal v. State, 261 Ark. 336, 548 S.W.2d 135 (1977). We do not interpret the jury’s action to mean that they did not consider the evidence of mitigation that was offered. Rather we find the jury determined that the appellant’s youth was not a mitigating factor, as they were entitled to do, and so indicated that no mitigating circumstances were found. Steven Hill, 289 Ark. at 396, 713 S.W.2d at 237-38 (emphasis added). This was error. Because evidence of mitigation was presented, the only option for the jury to mark, if it did not believe that the evidence presented rose to the level of mitigating evidence was Form 2 C: “There was evidence of the following mitigating circumstances, but the jury unanimously agreed that they did not exist at the time of the murder.” Our reliance in Steven Hill on Giles and Neal was misplaced because the verdict forms in Giles and Neal were substantially different from the verdict forms in Steven Hill. In Giles, ^neither section D, nor anything analogous to section D, was a part of the mitigating-eircumstances verdict form. The jury in Giles was asked to determine only whether each mitigating circumstance existed. By marking each proposed mitigating circumstance, the Giles jury acknowledged that it had considered the evidence and then made a finding about the evidence. Likewise, the verdict form from the Neal case reveals that the jury was asked to consider whether each mitigating circumstance existed and make a finding to that effect on the verdict form. As in the Giles case, nothing like section D was a part of the mitigating-circumstances verdict form in Neal. Key to understanding the error in Steven Hill is the distinction between & failure to consider evidence of a mitigating circumstance and a failure to find a mitigating circumstance. Simply stated, Giles and Neal were “failure to find” cases and Steven Hill was a “failure to consider” case.[3] In Steven Hill, this court conflated the two concepts and erroneously applied “failure to find” law to a “failure to consider” ease.[4] For that reason, Steven Hill should be expressly overruled. 137This court perpetuated this error in Darrel Hill v. State, 331 Ark. 312, 962 S.W.2d 762 (1998). As in Steven Hill, the court erroneously applied “failure to find” law to a “failure to consider” case: Appellant provided several witnesses to testify that he had changed and had become a productive person in prison. Appellant argues that, at a minimum, the jury should have at least found that there was evidence of mitigating circumstances, even if they agreed unanimously that it did not exist.... Appellant argues that the jury showed that it did not consider the evidence by checking that part of the form [Part D] stating that it found no evidence of mitigation. This court has previously held that “[a] jury is not required to find a mitigating circumstance just because the defendant puts before the jury some evidence that could serve as the basis for finding the mitigating circumstance.” Bowen, 322 Ark. at 497, 911 S.W.2d at 561 (citing Duncan v. State, 291 Ark. 521, 726 S.W.2d 653 (1987), and Hill v. State, 289 Ark. 387, 713 S.W.2d 233 (1986), cert. denied, 479 U.S. 1101 [107 S.Ct. 1331, 94 L.Ed.2d 182], and cert. denied, 484 U.S. 873 [108 S.Ct. 208, 98 L.Ed.2d 159] (1987)). This court held further that the jury alone determines what weight to give the evidence, and may reject it or accept all or any part of it the jurors believe to be true. Id. (citing Davasher v. State, 308 Ark. 154, 823 S.W.2d 863, cert. denied, 504 U.S. 976 [112 S.Ct. 2948, 119 L.Ed.2d 571] (1992), and Robertson v. State, 304 Ark. 332, 802 S.W.2d 920 (1991)).... Here, the fact that after consideration, the jury did not regard Appellant’s change as a mitigating factor was not an error, as the jury was free to believe or disbelieve Appellant’s -witness. Id. at 316-17, 318, 962 S.W.2d at 764-65 (emphasis added). In Darrel Hill, the court concluded that, after consideration, the jury rejected mitigating evidence. But the jury marked section D, indicating that there was no evidence of any mitigating circumstance presented. How could the jury have considered evidence when it said there was no evidence? Darrel Hill should be expressly overruled.[5] fyAs I previously stated, I believe that Steven Hill and Darrel Hill were implicitly overruled[6] in Anderson. In that case, Anderson argued that the jury erred in marking Form 2 D, indicating that no evidence of mitigation was offered, when evidence was clearly presented and, at times, went unrebutted by the State. We stated: We agree that the jury’s decision to cheek Form 2 D was clearly in error. There was unrebutted evidence offered in mitigation by Anderson regarding the fact that he grew up in an abusive family, that his mother was mentally retarded, and that he was separated from his family and sent to a foster home at an early age. While the evidence may not have established that a mitigating circumstance “probably existed” for the murder, it was certainly presented for that purpose. What the jury should have checked, if it did not believe the evidence presented rose to the level of mitigating evidence, is Form 2 C: “C. () There was some evidence presented to support the following circumstance(s). However, having considered this evidence, the jury unanimously agreed it was insufficient to establish that the mitigating circumstance(s) probably existed[.]” The jurors did not check Form 2 C; nor did they mark any of the proposed mitigators to show that some evidence was offered to support them. [[Image here]] The Note on Use to Form 2 in our Model Criminal Instructions refers specifically to section D and states that it should be used only when neither the State nor the defendant has introduced any mitigating evidence at any point during the trial. See AMI Crim.2d 1008, Form 2. That was not the situation in the instant case. Without proof that the jury at least considered and examined the mitigating evidence ^presented, an essential and fundamental step in the weighing process was not taken, and the death sentence became automatic. We are mindful that the State contends that the jury’s marking of Form 2 D is harmless error, because the jury found that the aggravator outweighed any mitigators in Form 3. What the State’s analysis presupposes, however, is that the jury considered the mitigating evidence. By checking Form 2 D, the jury said it did not. [[Image here]] Based on Form 2 D, we can only conclude that the jury eliminated from its consideration all evidence presented of mitigating circumstances and sentenced Anderson to death solely based on the aggravating circumstance. This, we conclude, was reversible error. Anderson, 357 Ark. at 220-21, 223, 224, 163 S.W.3d at 358, 359, 360.[7] The majority states that our decision in Anderson is not inconsistent with our decisions in Steven Hill and Darrel Hill because Anderson involved different instructions and verdict forms than those used in Steven Hill and Darrel Hill. According to the majority, a comparison |4nof the verdict forms used in Anderson, see AMI Crim.2d 1008, with the verdict forms used in Steven Hill and Darrel Hill, see AMI Crim. 1509, reveals that Anderson was not contrary to the law announced in Steven Hill and Darrel Hill, but was simply a correct result based on the forms and instructions used in Anderson’s trial. I disagree. While the forms and instructions used in Anderson’s trial may have been slightly reworded, they were not substantially different from the instructions and forms used in Steven Hill’s trial and Darrel Hill’s trial. Moreover, both versions of the verdict forms were written in accordance with statutory sentencing requirements for capital cases. The procedure for considering and weighing evidence when Anderson was tried was the same when Steven Hill and Darrel Hill were tried. In other words, while the language in the verdict forms may have changed slightly, the law governing sentencing procedures did not. By marking Form 2 D, Steven Hill’s jury and Darrel Hill’s jury, like the jury in Anderson, stated that it did not consider mitigating evidence. Anderson, 357 Ark. at 223, 163 S.W.3d at 359. The majority states that it is the “differing language between” the form used in Anderson and the forms used in Steven Hill and Darrel Hill that accounts for the differing results in the Anderson and Hill cases. Whether in Arkansas Model Jury Instruction-Criminal 1509, which was used in the Hill cases, or Arkansas Model Jury Instruction-Criminal 2d 1008, which was used in Anderson, the purposes of Form 2 C and D are the same. Form 2 D should be marked by the jury only if there is no evidence of mitigating circumstances submitted to the jury. See, e.g., Anderson v. State, 353 Ark. 384, 410, 108 S.W.3d 592, 609 141 (2003); Jackson v. State, 352 Ark. 359, 362, 105 S.W.3d 352, 355 (2003). Form 2 C should be marked by the jury if there was evidence of mitigating circumstances submitted to the jury, but the jury unanimously agreed that it did not find that evidence to be mitigating. [[Image here]] (Emphasis added.) In short, if there was evidence of mitigating circumstances, then the jury should mark Form 2 C. If there was no evidence of mitigating circumstances, then the jury should mark Form 2 D. Having examined the two versions of Form 2 C and D, I fail to see the “substantial and material amendment” relied on by the majority to explain the differing results in Anderson and the Hill cases. What I do see is that the majority has relied on changes in the wording (but not changes in the meaning) of the verdict forms in an attempt to distinguish Anderson from the Hill cases. In other words, the majority has exalted form over substance to justify disparate treatment of death-row inmates. Anderson cannot be reconciled with Steven Hill and Darrel Hill. Our decision in Williams v. State, 2011 Ark. 534 makes this clear. In Williams, the jury was instructed in | ^accordance with Arkansas Model Jury Instruction-Criminal 1509, the same instructions and verdict forms used in the trials of Steven Hill and Darrel Hill. In Williams, Williams offered evidence in mitigation, but the jury erroneously marked Form 2, section D, indicating that no evidence of mitigation had been presented.[8] We correctly concluded that our failure to discover the jury’s error constituted a defect or breakdown in the appellate process: While the evidence presented may or may not have established that a mitigating circumstance “probably existed” for the murder, it was certainly offered for that purpose. If the jury did not believe that the evidence presented rose to the level of mitigating evidence, it should have marked subsection C of Form 2. The jurors did not check Form 2 C; nor did they mark any of the proposed miti-gators to show that some evidence was offered to support them. While each juror was polled generally on whether his or her verdict was a death sentence, there was no polling of the jury regarding any mitigating circumstance. As we held in Anderson [v. State, 357 Ark. 180, 163 S.W.3d 333 (2004)], the manner in which the jury completed Form 2 D allows us only to conclude that the jury eliminated from its consideration all evidence presented of mitigating circumstances and sentenced Williams to death solely based on the aggravating circumstance, which is reversible error. This error was obviously not discovered during Williams’s direct appeal, which constitutes a defect or breakdown in the appellate process in this death-penalty case requiring heightened scrutiny. Because of these unique circumstances, we find we must recall the mandate and reopen Williams’s direct appeal. Additionally, we must reverse the death sentence and order re-sentencing. Williams, 2011 Ark. 534, at 6-7, 2011 WL 6275536.[9] |4SNooner’s jury, like the jury in Williams, was instructed in accordance with Arkansas Model Jury Instruction-Criminal 1509 when it marked Form 2 D. If the jury in Nooner’s case did not believe that the evidence presented rose to the level of mitigating evidence, it should have marked Form 2 C. Anderson, 357 Ark. at 221, 163 S.W.3d at 358. In Nooner’s case, as in Anderson and Williams, the manner in which the jury completed Form 2 D demonstrates that the jury eliminated from its consideration all evidence presented of mitigating circumstances and sentenced Nooner to death based solely on aggravating circumstances. This is reversible error, and pursuant to our holdings in Anderson and Williams, this court should recall the mandate and reopen Nooner’s direct appeal, reverse Nooner’s death sentence, and order resentencing. Finally, after reading the majority’s discussion of the inconsistencies in our decisions regarding whether the three factors first announced in Robbins v. State, 353 Ark. 556, 114 S.W.3d 217 (2003) must be satisfied to demonstrate extraordinary circumstances that warrant the recall of a mandate, I am left with one question: Do the Robbins factors have to be | ^satisfied or not? [10] Motions to recall mandate are currently pending in this court. The majority should settle the issue. DANIELSON and HART, JJ. join. LsAPPENDIX I [As used in Giles v. State, 261 Ark. 413, 549 S.W.2d 479 (1977) ] Form B Mitigating Circumstances The Jury will make each of the following findings by having its Foreman place a check mark in the appropriate space in the sentence in accordance with the Jury’s response. These findings must be unanimously made. Each member of the Jury will then sign the bottom of the form. WE THE JURY FIND THAT: (a) () The capital felony was committed while the Defendant was acting under unusual pressures or influence, or under the domination of another person. (X) The capital felony was not committed while the Defendant was acting under unusual pressures or influence, or under the domination of another person. (b) () The capital felony was committed while the capacity of the Defendant to appreciate the wrongfulness of his conduct, or to conform his conduct to the requirements of law, was impaired as a result of mental disease or defect, intoxication or drug abuse. (X) The capital felony was not committed while the capacity of the Defendant to appreciate the wrongfulness of his conduct, or to conform his conduct to the requirements of law, was impaired as a result of mental disease or defect, intoxication or drug abuse. (c) () The Defendant’s age, at the time of the commission of the felony capital [sic], was a mitigating circumstance. (X) The Defendant’s age, at the time of the commission of the capital felony, was not a mitigating circumstance. (d) () The capital felony was committed by another person and the Defendant was an accomplice or his participation relatively minor. (X) The capital felony was not committed by another person and the Defendant was not an accomplice or his participation relatively minor. (e) () Additional mitigating circumstances not mentioned above exist. |4(i(X) Additional mitigating circumstances not mentioned above do not exist. (If such other circumstances are found to exist, please indicate them on the reverse side of this form.) (f) () The capital felony was committed while the Defendant was under extreme mental or emotional disturbance. (X) The capital felony was not committed while the Defendant was under extreme mental or emotional disturbance. (g) () One or more of the above listed mitigating circumstance(s) existed. (X) One or more of the above listed mitigating circumstance(s) does not exist. |47APPENDIX II [As used in Neal v. State, 261 Ark. 386, 548 S.W.2d 135 (1977) ] MITIGATING CIRCUMSTANCES 1. The capital felony murder was committed while the defendant was under extreme mental or emotional disturbance: DOES EXIST_ DOES NOT EXIST _X 2. The capital felony was committed while the defendant was acting under unusual pressure or influence, or under the domination of another person: DOES EXIST_ DOES NOT EXIST X 3. The capital felony was committed while the capacity of the defendant to appreciate the wrongfulness of his conduct, or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect, intoxication or drug abuse: DOES EXIST_ DOES NOT EXIST _X 4. The youth of the defendant at the time of the commission of the capital felony: DOES EXIST_ DOES NOT EXIST _X 5. The capital felony was committed by another person and the defendant was an accomplice or his participation was relatively minor. DOES EXIST_ DOES NOT EXIST _X |4SAPPENDIX III [As used in Steven Hill v. State, 289 Ark. 387, 713 S.W.2d 233 (1986)) AMCI 1509 Form 2 MITIGATING CIRCUMSTANCES A. () We unanimously find that the following mitigating circumstances probably existed at the time of the murder: (Check applicable circumstances and specify any additional ones.) () The capital murder was committed while Steven Hill was under extreme mental or emotional disturbance. () The capital murder was committed while Steven Hill was acting under unusual pressures or influences or under the domination of another person. () The youth of Steven Hill at the time of the commission of the capital murder. () Other: Specify in writing_ B. () One or more members of the jury believed that the following mitigating circumstances probably existed, but the jury did not unanimously agree: () The capital murder was committed while Steven Hill was under extreme mental or emotional disturbance. () The capital murder was committed while Steven Hill was acting under unusual pressures or influences or under the domination of another person. () The youth of Steven Hill at the time of the commission of the capital murder. () Other: Specify in writing_ C. () There was evidence of the following mitigating circumstances, but the jury unanimously agreed that they did not exist at the time of the murder: 14ci() The capital murder was committed while Steven Hill was under extreme mental or emotional disturbance. () The capital murder was committed while Steven Hill was acting under unusual pressures or influences or under the domination of another person. () The youth of Steven Hill at the time of the commission of the capital murder. () Other: Specify in writing_ D. (X) There was no evidence of any mitigating circumstance. (Check if applicable.) /s/- FOREMAN ImAPPENDIX IV [As used in Darrel Hill v. State, 3B1 Ark. 312, 962 S.W.2d 762 (1998) ] FORM 2 MODIFIED MITIGATING CIRCUMSTANCES A. () We unanimously find that the following mitigating circumstances probably existed: (Check applicable circumstances and specify any additional ones.) () The capital murder was committed while Darrel Hill was under extreme mental or emotional disturbance. () The murder was committed while Darrel Hill was acting under unusual pressures and influences or under the domination of another person. () The capital murder was committed while the capacity of Darrel Hill to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect, intoxication, or drug abuse. () Other: () Darrel Hill has a good prison record. () Darrel Hill has expressed remorse for the crime. () Darrel Hill grew up in a dysfunctional family. () Darrel Hill has friends who care about him. () Darrel Hill is a changed person. () Darrel Hill has been active in the prison ministry while in jail. () Darrel Hill has a long history of prior mental commitments. () Darrel Hill is unlikely to commit another crime that would constitute a threat to society. () Darrel Hill’s poor medical condition and heart bypass surgery. 151() Other mitigating circumstances not specifically identified by the State or the defense_ B. () One or more of the members of the jury believed that the following mitigating circumstances probably existed, but the jury did not unanimously agree: () The capital murder was committed while Darrel Hill was under extreme mental or emotional disturbance. () The murder was committed while Darrel Hill was acting under unusual pressures and influences or under the domination of another person. () The capital murder was committed while the capacity of Darrel Hill to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was impaired as a result of his mental disease or defect, intoxication, or drug abuse. () Other: () Darrel Hill has a good prison record. () Darrel Hill has expressed remorse for the crime. () Darrel Hill grew up in a dysfunctional family. () Darrel Hill has friends who care about him. () Darrel Hill is a changed person. () Darrel Hill has been active in the prison ministry while in jail. () Darrel Hill has a long history of prior mental commitments. () Darrel Hill is unlikely to commit another crime that would constitute a threat to society. () Darrel Hill’s poor medical condition and heart bypass surgery. () Other mitigating circumstances not specifically identified by the State or the de-fense_ 1,⅞0. () There was evidence of the following mitigating circumstances, but the jury unanimously agreed that they did not exist: () The capital murder was committed while Darrel Hill was under extreme mental or emotional disturbance. () The murder was committed while Darrel Hill was acting under unusual pressures and influences or under the domination of another person. () The capital murder was committed while the capacity of Darrel Hill to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect, intoxication, or drug abuse. () Other: () Darrel Hill has a good prison record. () Darrel Hill has expressed remorse for the crime. () Darrel Hill grew up in a dysfunctional family. () Darrel Hill has friends who care about him. () Darrel Hill is a changed person. () Darrel Hill has been active in the prison ministry while in jail. () Darrel Hill has a long history of prior mental commitments. () Darrel Hill is unlikely to commit another crime that would constitute a threat to society. () Darrel Hill’s poor medical condition and heart bypass surgery. () Other mitigating circumstances not specifically identified by the State or the de-fense_ D. (X) There was no evidence of any mitigating circumstance. (Check if applicable). IfiVs/- FOREMAN | mAPPENDIX V [As used in Williams v. State, 321 Ark. 344, 902 S.W.2d 767 (1995) ] FORM 2-MITIGATING CIRCUMSTANCES A. () We unanimously find that the following mitigating circumstances probably existed at the time of the murder: (Check applicable circumstances and specify any additional ones.) () The capital murder was committed while Frank Williams was under extreme mental or emotional disturbance. () The capital murder was committed while Frank Williams was acting under unusual pressures or influences or under the domination of another person. () The capital murder was committed while the capacity of Frank Williams to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect, intoxication, or drug abuse. () The youth of Frank Williams at the time of the capital murder. () Other: (Specify in writing.)_ B. () One or more members of the jury believed that the following mitigating circumstances probably existed, but the jury did not unanimously agree: (Check applicable circumstances and specify any additional ones.) () The capital murder was committed while Frank Williams was under extreme mental or emotional disturbance. () The capital murder was committed while Frank Williams was acting under unusual pressures or influences or under the domination of another person. () The capital murder was committed while the capacity of Frank Williams to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect, intoxication, or drug abuse. I m() The youth of Frank Williams at the time of the capital murder. () Other: (Specify in writing.)_ C. () There was evidence of the following mitigating .circumstances, but the jury unanimously agreed that they did not exist at the time of the murder: (Check applicable circumstances and specify any additional ones.) () The capital murder was committed while Frank Williams was under extreme mental or emotional disturbance. () The capital murder was committed while Frank Williams was acting under unusual pressures or influences or under the domination of another person. () The capital murder was committed while the capacity of Frank Williams to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect, intoxication, or drug abuse. () The youth of Frank Williams at the time of the capital murder. () Other: (Specify in writing.)_ D. (X) There was no evidence of any mitigating circumstance. (Check if applicable.) /s/- FOREPERSON APPENDIX VI Arkansas Model Jury Instruction-Criminal 2d 1008 (2012) Form 2 MITIGATING CIRCUMSTANCES For each of the following mitigating circumstances, you should place a checkmark in the appropriate space to indicate the number of jurors who find that the mitigating circumstance probably exists. [The capital murder was committed while (defendant) was under extreme or emotional disturbance. Check one of the following: _All members of the jury find that this circumstance probably exists. _At least one, but not all members of the jury find that this circumstance probably exists. _No member of the jury finds that this circumstance probably exists.] [The capital murder was committed while (defendant) was acting under unusual pressures or influences or under the domination of another person. Check one of the following: _All members of the jury find that this circumstance probably exists. _At least one, but not all members of the jury find that this circumstance probably exists. _No member of the jury finds that this circumstance probably exists.] [The capital murder was committed while the capacity of (defendant) to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect, intoxication, or drug abuse. | fi7Check one of the following: _All members of the jury find that this circumstance probably exists. _At least one, but not all members of the jury find that this circumstance probably exists. _No member of the jury finds that this circumstance probably exists.] [The youth of (defendant) at the time of the commission of the capital murder. Check one of the following: _All members of the jury find that this circumstance probably exists. _At least one, but not all members of the jury find that this circumstance probably exists. _No member of the jury finds that this circumstance probably exists.] [The capital murder was committed by another person and (defendant) was an accomplice and (his)(her) participation relatively minor. Cheek one of the following: _All members of the jury find that this circumstance probably exists. _At least one, but not all members of the jury find that this circumstance probably exists. _No member of the jury finds that this circumstance probably exists.] [ (Defendant) (has) (had) no significant history of prior criminal activity. Check one of the following: All members of the jury find that this circumstance probably exists. At least one, but not all members of the jury find that this circumstance probably exists. _No member of the jury finds that this circumstance probably exists.] | r,«Other mitigating circumstances. Specify below in writing any other mitigating cir-eumstances that all members of the jury find probably exists. If no member of the jury finds that other mitigating circumstances probably exist, leave the space below blank. Other mitigating circumstances. Specify below in writing any other mitigating circumstances that all members of the jury find probably exists. If no member of the jury finds that other mitigating circumstances probably exist, leave the space below blank. FOREMAN NOTE ON USE With respect to each mitigating circumstance listed on Form 2, the jury should indicate that either (1) all jurors find that a mitigating circumstance probably exists; or (2) at least one, but not all jurors find that the mitigating circumstance probably exists; or (3) no juror finds that the mitigating circumstance exists. Mitigating circumstances include, but are not limited to, those listed in Ark.Code Ann. § 5-4-605. If supported by the evidence, it is permissible to include on Form 2 additional mitigating circumstances proffered by the defendant if the form is consistent with that above. Mitigating circumstances are not limited to those in existence at the time of the capital murder but may include events that have occurred after the defendant’s arrest or even during imprisonment pending a successful appeal from a death sentence. Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986), followed in Pickens v. State, 292 Ark. 362, 730 S.W.2d 230 (1987). The trial court is not required to instruct that a lingering doubt regarding guilt may be considered a mitigating circumstance. Ruiz v. State, 299 Ark. 144, 772 S.W.2d 297 (1989). The final portion of Form 2 permits the jury to specify any mitigating circumstances not specifically listed on the form. IsaThere may be rare and extraordinary cases in which no specific mitigating circumstances are listed on the verdict form submitted to the jury. In such a case, Form 2 should include only the final portion in which the jury may specify in writing its own mitigating circumstances. In addition, Form 2 should be modified to require the jury to write “None” in the space provided for mitigating circumstances, thereby permitting an appellate court to determine that the jury considered and rejected any mitigating circumstances. . Form 2 has caused much confusion for both juries and courts. See Williams v. State, 2011 Ark. 534, at 4-7, 2011 WL 6275536; Anderson v. State, 357 Ark. 180, 219-24, 163 S.W.3d 333, 357-60 (2004); Anderson v. State, 353 Ark. 384, 409-11, 108 S.W.3d 592, 608-09 (2003); Jackson v. State, 352 Ark. 359, 362-69, 105 S.W.3d 352, 355-59 (2003); Hill v. State, 331 Ark. 312, 315-18, 962 S.W.2d 762, 763-65 (1998); Camargo v. State, 327 Ark. 631, 646-47, 940 S.W.2d 464, 472 (1997); Willett v. State, 322 Ark. 613, 625-28, 911 S.W.2d 937, 943-44 (1995); Bowen v. State, 322 Ark. 483, 495-98, 911 S.W.2d 555, 560-62 (1995); Hill v. State, 289 Ark. 387, 396, 713 S.W.2d 233, 237-38 (1986); see also Starr v. Lockhart, 23 F.3d 1280, 1294 n. 13 (8th Cir.1994). . Like the verdict forms in Nooner’s case, the verdict forms in Steven Hill’s case were based on Arkansas Model Jury Instruction-Criminal 1509. . The verdict forms at issue in Giles, Neal, and Steven Hill are reproduced in full and attached as appendices to this dissent. See Appendices I — III. . While we recognized the distinction between the two concepts in Bowen v. State, 322 Ark. 483, 498, 911 S.W.2d 555, 561-62 (1995), due to an incomplete record, we were unable to reach the issue of whether the jury failed to consider evidence of the appellant's mental illness. . Form 2 as used in Darrel Hill is reproduced in full and attached as an appendix to this dissent. See Appendix IV. . The majority states that the Hill cases have not been implicitly overruled because this court has continued to cite them with approval even after Anderson was decided. The principle of law announced in the Hill cases — that the jury is not required to find a mitigating circumstance just because the defendant presents some evidence that could serve as the basis for finding the mitigating circumstance-remains good law. This court erred in the Hill cases because it misapplied that principle of law to the facts of those cases when it ignored the plain language of the verdict forms and held, in effect, that if a jury considered and then rejected mitigating evidence, it had the option of marking either Form 2 C or D. Anderson implicitly overruled this misapplication of the law. . So great was our concern in Anderson about the confusion caused by Form 2 D, we urged "circuit courts, prosecutors, and defense counsel to refer to the Note on Use for Form 2 with respect to when the form should be modified to exclude section D." 357 Ark. at 224 n. 16, 163 S.W.3d at 360 n. 16. We further urged "the Criminal Instructions Committee to consider whether section D should be eliminated altogether, or whether the Note on Use should be revised to specifically delineate those instances in which section D’s use would be appropriate." Id., 163 S.W.3d at 360 n. 16. Section D has been eliminated from Form 2. Jurors are now instructed as follows: For each of the following mitigating circumstances, you should place a checkmark in the appropriate space to indicate the number of jurors who find that the mitigating circumstance probably exists. See AMI Crim.2d 1008 (2012). This verdict form is reproduced in full and attached as an appendix to this dissent. See Appendix VI. . Form 2 as used in Williams is reproduced in full and attached as an appendix to this dissent. See Appendix V. . The majority states that this court erred in Williams when it concluded that by checking Form 2 D, Williams's jury made the same error that Anderson’s jury had made when it checked Form 2 D in Anderson. According to the majority, the juries could not have made the same error because the verdict forms were not the same — Form 2 D in Anderson was based on AMI Crim.2d 1008, while Form 2 D in Williams was based on AMI Crim. 1509. I find it odd that the majority relies on this "distinction,” given that, less than three years ago, this court rejected the same "distinction” argument made by the State when it petitioned for rehearing in Williams. . As I stated in my dissent in Wooten v. State, 2010 Ark. 467, 370 S.W.3d 475, this court has long recognized its inherent authority to recall its mandate, see Boynton v. Ashabraner, 75 Ark. 415, 422, 88 S.W. 1011, 1011 (1905), and that authority is not limited or controlled by the supposed three-factor test in Robbins. Wooten, 2010 Ark. 467, at 21, 370 S.W.3d at 486 (Hannah, C.J., dissenting). In Robbins, this court made it clear that each petition to recall a mandate is examined on its own merits — that such cases are "one of a kind, not to be repeated.’ ” Robbins, 353 Ark. at 564, 114 S.W.3d at 223. A general test cannot be created from a case that clearly states it is one of a kind. Each petition to recall a mandate must be separately examined to determine whether justice requires that the mandate be recalled under the unique facts of that particular case. Wooten, 2010 Ark. 467, at 21, 370 S.W.3d at 486 (Hannah, C.J., dissenting). Thus, my answer to the question of whether the Robbins factors must be satisfied is no. I am aware, however, that my dissent in Wooten has no precedential value.